[Cite as *State v. Cooperwood*, 2013-Ohio-3432.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 99309, 99310, and 99311**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WALTER COOPERWOOD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-561050, CR-561051, and CR-561115

**BEFORE:** McCormack, J., Stewart, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 8, 2013

**ATTORNEY FOR APPELLANT**

Richard Agopian
The Hilliard Building
1415 West 9th St., 2nd Floor
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Kristin Karkutt
John D. Toth
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Walter Cooperwood, appeals from a judgment of the Cuyahoga County Court of Common Pleas that sentenced him to a total of 22 years in prison for his conviction of attempted rape, robbery, failure to comply, receiving stolen property, and attempted felonious assault, in three separate cases. Cooperwood was 17 at the time he committed the offenses. He argues on appeal that the juvenile court failed to give reasons to support its decision to transfer him to adult court. He argues additionally that the trial court's imposition of consecutive sentences is contrary to law. After a careful review of the record, we affirm the trial court's judgment.

## Substantive Facts and Procedural History

{¶2} Cooperwood, using the name "Silence," met a female on "Backpage," an Internet dating site. He arranged to personally meet with her. As instructed, on July 19, 2011, around 2:00 a.m., the female drove to a house at West 33rd Street and Denison Street to meet him. When she got there, standing outside the house was Cooperwood and another man unknown to her. The unknown man quickly came to the driver's side of her vehicle, put a gun to her head, told her to get out of her vehicle and lie on the ground. He then took her purse. He and Cooperwood then picked her off the ground and ordered her to walk to the back of the house.

{¶3} As she walked, Cooperwood kept saying, "Yeah, bitch, we are about to dog you." When they got to the side of the house, Cooperwood stood behind her, pulled her

undergarments down and raped her. The other man ordered her to perform fellatio on him and also raped her after Cooperwood was finished. They then ordered her to lie on the ground. They sped off with her purse and her vehicle. A woman living in the house heard her screaming and came to her rescue.

{¶4} The state filed a complaint regarding these incidents in the juvenile court and also filed a motion for a bindover to the common pleas court. On January 19, 2012, the juvenile court held a preliminary hearing to determine probable cause in the case. Juv.R. 30 mandates just such a hearing before the juvenile court can transfer jurisdiction to the common pleas court. At this hearing, the court heard testimony from the victim and Officer Beveridge, who investigated the incident. The court found probable cause existed and ordered a full psychological report, also as required by Juv.R. 30 before a bindover could occur.

{¶5} While in the juvenile detention center, Cooperwood planned and incited a riot on New Year's Day, 2012, by dancing and punching people. One of the detained youths was punched and fell to the ground. While he was down, Cooperwood kicked him in the face. The victim received four stitches for his injury. Regarding this incident, Cooperwood later stated, "I might as well have my fun." Based on this incident, Cooperwood was charged with felonious assault.

{¶6} On February 23, 2012, the juvenile court held a preliminary hearing to determine probable cause in the felonious assault case. The victim testified regarding the incident at the detention center and the injury he sustained. The court similarly found

probable cause in the felonious assault case and also ordered a full psychological evaluation.

{¶7} At this hearing, the court determined that probable cause existed for yet another case, where Cooperwood was charged with failure to comply, receiving stolen property, and vandalism. That incident happened on July 6, 2011, two weeks before the rape incident.

{¶8} According to several witnesses' testimony, on that day, Cooperwood stole a Dodge Dakota from a driveway. Later that day, he got into a confrontation with a coffee shop owner. As he tried to leave the scene with two friends in the stolen truck, a police officer responded to the disturbance call and attempted to pull over the vehicle. Instead of complying, Cooperwood took off at a high speed, cut through a parking lot, ran a traffic light, and traveled on the wrong side of the street. One of the passengers bailed out. Cooperwood then drove the truck through residential backyards and eventually crashed into the side of a house. The resident of the house was sitting in her living room watching the 11:00 evening news. The crash damaged the walls of the house and also broke a waterline, which flooded its basement. The police officer apprehended the other passenger, but Cooperwood fled the scene.

{¶9} After hearing the testimony from the stolen truck's owner, the police officer, the passenger who bailed out of the truck, and the resident of the damaged home, the juvenile court found probable cause existed and again ordered a full psychological evaluation.

{¶10} On March 26, 2012, the juvenile court held a combined amenability hearing in all three cases, required by Juv.R. 30(C) before a bindover. The court found a transfer of jurisdiction to be proper.

{¶11} Subsequent to his transfer to the common pleas court, Cooperwood was indicted for rape, kidnapping, aggravated robbery, felonious assault, and various other offenses in these three cases. Under a plea bargain, he pleaded guilty to attempted rape, robbery, and theft in Cuyahoga C.P. No. CR-561050; failure to comply, receiving stolen property, and vandalism in Cuyahoga C.P. No. CR-561115; and attempted felonious assault in Cuyahoga C.P. No. CR-561051.

{¶12} For the rape and robbery case, the trial court imposed eight years for his conviction of attempted rape and eight years for robbery, to run consecutively to each other. For the stolen vehicle case, the court sentenced him to 30 months for failure to comply and 18 months for receiving stolen property, to run consecutively to each other; the court also imposed six months for his conviction of vandalism, to run concurrently with his sentence for receiving stolen property. For the assault case, the court sentenced him to two years for his conviction of attempted felonious assault. The sentences in these three cases are to run consecutively, totaling 22 years.

{¶13} Cooperwood filed three separate appeals from the trial court's judgments, and this court consolidated these appeals for briefing, hearing, and disposition. He raises two assignments of error. Under the first assignment of error, he contends that his consecutive sentences are contrary to law. Under the second assignment of error, he

claims the juvenile court failed to give reasons to support the bindover. We address the bindover claim first.

## Bindover: Juv.R. 30 and R.C. 2152.12

**{¶14}** Under Ohio's juvenile justice system, two types of transfer exist: discretionary and mandatory. *State v. Hanning*, 89 Ohio St.3d 86, 2000-Ohio- 436, 728 N.E.2d 1059. Pursuant to R.C. 2152.12, a bindover is mandatory when, for example, a juvenile is 16 or older and commits an offense such as murder.

**{¶15}** Discretionary transfer, on the other hand, allows the juvenile court discretion to transfer to adult court certain juveniles "who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety." *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 10, citing *Hanning* at 90 and R.C. 2152.12.

**{¶16}** Juv.R. 30 and R.C. 2152.12 set forth procedures to follow for discretionary transfer. Juv.R. 30 states, in pertinent part:

(C) Discretionary transfer.

In any proceeding in which transfer of a case for criminal prosecution is permitted, but not required, by statute, and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, an amenability hearing

shall be held to determine whether to transfer jurisdiction. The criteria for transfer shall be as provided by statute.

{¶17} In addition, when the juvenile court issues an order of transfer, Juv.R. 30(G) requires that the order "shall state the reasons for transfer."

{¶18} R.C. 2152.12 also provides for discretionary transfer.    Section (C) of the statute states, in pertinent part:

> (C) Before considering a transfer under division (B) of this section, the juvenile court shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination.

{¶19} In section (D), the statute enumerates nine factors to be considered by the juvenile court in discretionary transfer.   The factors in favor of a transfer are:

> (1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.
> (2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.
> (3) The child's relationship with the victim facilitated the act charged.
> (4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.
> (5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged * * *.
> (6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.
> (7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.
> (8) The child is emotionally, physically, or psychologically mature enough for the transfer.
> (9) There is not sufficient time to rehabilitate the child within the juvenile system.

**{¶20}** In Section (E), the statute enumerates eight factors against a transfer. They include factors such as whether the victim induced the act charged, whether the juvenile offender acted under provocation, or whether he or she has mental illness or is mentally retarded.

**{¶21}** Moreover, when the trial court determines a transfer is proper, R.C. 2152.12 requires that the juvenile court "shall state the reasons for the transfer on the record." R.C. 2152.12(I).

**{¶22}** In *In re M.P.*, 124 Ohio St.3d 445, 2010-Ohio-599, 923 N.E.2d 584, ¶ 12, the Supreme Court of Ohio, describes the discretionary bindover proceeding as follows:

> When the state requests a discretionary bindover, the juvenile court is * * * to determine the age of the child and whether probable cause exists to believe that the juvenile committed the act charged. R.C. 2152.10(B) and 2152.12(B)(1) and (2). However, if probable cause exists and the child is eligible by age, the juvenile court must then continue the proceeding for a full investigation. R.C. 2152.12(C) and Juv.R. 30(C). This investigation includes a mental examination of the child, a hearing to determine whether the child is "amenable to care or rehabilitation within the juvenile system" or whether "the safety of the community may require that the child be subject to adult sanctions," and the consideration of 17 other statutory criteria to determine whether a transfer is appropriate. Juv.R. 30(C); R.C. 2152.12(B), (C), (D) and (E).

**{¶23}** Thus, pursuant to Juv.R. 30 and R.C. 2152.12, after a determination that probable cause exists, the juvenile court should hold an amenability hearing to determine whether a juvenile offender who is eligible for discretionary bindover will be transferred to adult court. *D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, at ¶ 12.

> A critical stage of the juvenile proceedings, the [amenability] hearing affects whether the juvenile faces a delinquency adjudication, or adult criminal sanctions and the label "felon." Given the nature and consequences of the amenability hearing, juvenile court judges are entrusted with significant authority when conducting the hearings.

(Internal citation omitted.) *Id.*

**{¶24}** Finally, we review a juvenile court's relinquishment of jurisdiction in discretionary bindover proceedings for an abuse of discretion. *In re A.J.S.,* 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629.

### Trial Court Fully Complied with Juv.R. 30 and R.C. 2152.12

**{¶25}** Under his second assignment of error, Cooperwood argues the juvenile court "failed to give reasons in support of" discretionary transfer to adult court under R.C. 2152.12. Our review of the record reflects otherwise.

**{¶26}** The record shows the juvenile court fully complied with Juv.R. 30 and R.C. 2152.12 before ordering a transfer of jurisdiction to the common pleas court. As required by Juv.R. 30, it held a probable cause hearing on each of the three cases. After finding probable cause, the court ordered a full psychological evaluation of Cooperwood. After the evaluation was completed, the court held a combined amenability hearing on the three cases.

**{¶27}** At the amenability hearing, the parties agreed to incorporate the testimony from the probable cause hearing held in the three cases. The parties also stipulated to the psychological evaluation. The state presented the testimony of Cooperwood's juvenile parole officer. He testified that Cooperwood had an extensive record with the Ohio Department of Youth Services, having been incarcerated five times. Since he took over the case in June 2011, Cooperwood never voluntarily met with him. Although various services and programs for rehabilitation had been available to him, he never completed any of them.

**{¶28}** The state argued that a bindover was appropriate under R.C. 2152.12 because the factors in favor of a bindover outweighed those against a bindover. The factors in favor of a bindover include the psychological and physical harm suffered by the rape victim, the firearm brandished by Cooperwood's codefendant during the rape incident, the relationship between Cooperwood and the victim that he used to facilitate the crime, his commission of that offense while on parole with the Ohio Department of Youth Services, and the lack of results of prior juvenile sanctions and programs.

**{¶29}** The state pointed out that, similarly, in the failure to comply case, the owner of the home into which Cooperwood crashed the stolen vehicle suffered serious economic harm. Cooperwood was on parole when committing various offenses during that incident. In the felonious assault case, Cooperwood committed the offense in the juvenile detention center while awaiting adjudication of the previous two cases. He inflicted serious physical harm to a detained youth there. The state pointed out this offense highlighted the

inability of the juvenile facility to hold Cooperwood and the unlikelihood of a rehabilitation within the juvenile system.

{¶30} Cooperwood's counsel, in turn, argued that although Cooperwood was not successful in community-based programs, he successfully participated in in-house programs while in custody of Ohio Department of Youth Services. His counsel also pointed out that he has family in the community, and they will help him with participation in the programs provided by the juvenile court.

{¶31} After hearing the arguments, the court determined Cooperwood was not amenable to rehabilitation within the juvenile justice system and a transfer to the common pleas court would be appropriate. The court stated that it had reviewed a nine-page psychological evaluation of Cooperwood and all other evidence before it, and it found that the factors enumerated in R.C. Chapter 2152 in favor of transfer outweighed those against it.

{¶32} In the journal entry ordering discretionary transfer in each of the three cases, the juvenile court noted the following factors: (1) at the time of the offense, the juvenile offender was either awaiting community control sanction or on parole for a prior delinquent adjudication; (2) the results of prior juvenile programs indicated that rehabilitation will not occur in the juvenile system; (3) the juvenile offender is emotionally and physically mature enough for the transfer; and, (4) considering the juvenile's age, there is insufficient time to rehabilitate him within the juvenile system. In two of the cases, the court noted in addition the physical and psychological harm suffered by the

victim.   Although the court did not recite the section numbers of the statutory factors, it was not required to — our review of R.C. 2152.12(D) reflects the court applied factors enumerated in sections (D)(1) and (D)(6)-(9) to determine a transfer was appropriate in this case.

{¶33} Thus, as required by R.C. 2152.12(B)(3), the record indicates "the specific factors that were applicable and that the court weighed."   Furthermore, the order of the transfer stated "the reasons for transfer" as required by Juv.R. 30(G) — by the enumeration of the factors in favor of a bindover.   Based on the record, the juvenile court properly complied with all the requirements for discretionary transfer.   The second assignment of error lacks merit.

## Consecutive Sentences

{¶34} Under the first assignment of error, Cooperwood contends the trial court's imposition of consecutive sentences was contrary to law.

{¶35} This court recently addressed the standard of review appellate courts must use in reviewing challenges to the imposition of consecutive sentences.   *State v. Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891.   In *Venes*, we held that we review consecutive sentences using the standard set forth in R.C. 2953.08.   *Id.* at ¶ 8-10.   That statute provides two grounds for an appellate court to overturn the imposition of consecutive sentences: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4).   *Id.* at ¶ 11; R.C. 2953.08(G)(2).

**{¶36}** Regarding what a trial court must do before imposing consecutive sentences, H.B. 86, effective on September 30, 2011, revived the requirement that trial courts make certain findings before imposing consecutive sentences. *State v. Graves*, 8th Dist. Cuyahoga No. 98559, 2013-Ohio-2197, ¶ 11. Under current R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find the existence of one of the three statutory factors set forth in R.C. 2929.14(C)(4)(a)-(c).

**{¶37}** Compliance with this statute "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *Venes*, 8th Dist. Cuyahoga No. 98682, 2013-Ohio-1891, at ¶ 17, citing *State v. Jones*, 93 Ohio St.3d 391, 399, 2001-Ohio-1341, 754 N.E.2d 1252. "By stating the findings on the record, the reviewing court will not have to guess as to the trial court's thought process or impose its own. This helps the reviewing court to understand whether the trial court made the appropriate analysis." *State v. Davis*, 8th Dist. Cuyahoga Nos. 97689, 97691, and 97692, 2012-Ohio-3951, ¶ 16 (Blackmon, J., concurring). The failure to make these findings is contrary to law. *Venes* at ¶ 12.

**{¶38}** Here, the trial court engaged in a lengthy and thorough analysis and made all the requisite statutory findings before imposing consecutive sentences. The court began

its analysis with the observation that Cooperwood, 18 at the time of sentencing, has a lengthy criminal history dating back four years (including two instances of robbery, domestic violence, theft, vandalism, and probation violation) before he committed the various offenses in the three pending cases. The court then recounted the disconcerting circumstances of each of the three cases, observing that Cooperwood's conduct in these cases shows he had absolutely no regard for the rules of society or law enforcement. The court noted that he exhibited antisocial behaviors and appeared to lack any remorse for his offenses. Before imposing consecutive sentences, the court stated the following:

> [T]he court[,] based upon the mandate set forth by the legislature, under House Bill 86, hereby makes the following findings: * * * Based upon the defendant's violent behavior, the violent nature of his behavior, the complete lack of consideration he has for other human beings, not only as borne out in the crimes for which he's been convicted, but in the admission he made to the court psychologist with regard to some of his motivations, the Court finds that consecutive sentences in this matter are *necessary to protect the public and punish the offender* and[,] given the circumstances of this case, *would not be disproportionate*.

> The Court finds that * * * the attempted felonious assault * * * was committed while the defendant was under detention and in fact was an effort to incite a riot inside of a detention facility that could have resulted in not only harm to individuals housed there, but also the police officers and guards present inside that facility, the majority of whom are not armed.

> The Court finds that based upon the facts and circumstances in this matter, the harm with regard to the rape case was so unusual, given the fact that she was brutally raped by not only him but his cohort, that the harm was so great or unusual that a single term would not adequately reflect the seriousness of the conduct. And obviously as I already outlined on the record, this defendant's criminal history shows the consecutive terms are need to protect the public.

> * * *

As the Court will further state for the record, the Court has already made findings with regards to this defendant's criminal history, the brutal nature of the rape in this case, the brutal nature of the riot that resulted in the injuries for the attempted felonious assault, the fact that this defendant fled from police officers in a surburban environment, led police officers on a high speed chase, crashed a vehicle into a home, nearly killing the individual — luckily she was not injured, it appears, but could have resulted in death or serious physical injury to the occupant of the home, clearly — and I will reiterate this, multiple times now, the defendant has shown that he has absolutely no regard for other human beings with regard to his behavior.

The Court further notes that the defendant, as already stated, has been placed under administrative supervision in the county jail for making threats while in the bullpen, which is the holding area that is used for defendants before brought up to the courtroom.

It's the Court's position based on the findings of the court clinic, and looking at the facts of the case, that the public clearly needs protected from Mr. Cooperwood, as he's showing seriously antisocial, potentially sociopathic behavior traits that would put the people of the State of Ohio at great risk if this defendant were allowed to walk the streets.

(Emphasis added.)

{¶39}   The trial court clearly delineated the reasons for its imposition of consecutive sentences and made all the requisite statutory findings:  it found such sentences were (1) necessary to protect the public from future and to punish the offender, (2) not disproportionate, and (3) warranted by the existence of not just one but all of the statutory factors in R.C. 2929.14(C)(4)(a)-(c).

{¶40} Cooperwood complains that the trial court, instead of stating that consecutive sentences "would not be disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," stated only that consecutive sentences "would not be disproportionate."   Viewing the court's statement in its context, we are

satisfied that the trial court made a distinct "proportionality" finding in compliance with the statute.

**{¶41}** Thus, our review of the record shows the trial court made all necessary separate and distinct findings pursuant to R.C. 2929.14(C) before it imposed consecutive sentences, and our review of the record supports these findings. The first assignment of error lacks merit.

**{¶42}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR