[Cite as *State v. Watkins*, 2018-Ohio-46.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2017-03-013 |
| | : | O P I N I O N |
| - vs - | | 1/8/2018 |
| | : | |
| MICHAEL G. WATKINS, JR., | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016CR0442


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

John Woliver, 204 North Street, Batavia, Ohio 45103, for defendant-appellant


**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Michael G. Watkins Jr., appeals the bindover decision of the Clermont County Court of Common Pleas, Juvenile Division, and his conviction and sentence in the Clermont County Court of Common Pleas, General Division.

{¶ 2}   On May 9, 2016, 16-year-old Watkins executed a plan to rob two victims by having two minor codefendants lure them to a Clermont County apartment.  Upon arriving at the apartment, Watkins and his codefendants threatened the victims with a firearm, then

assaulted and robbed them. Following the completion of the robbery plan, the victims left the apartment and contacted the police who responded to the apartment and arrested Watkins. On May 10, 2016, the state filed a delinquency complaint alleging charges for felony aggravated robbery and misdemeanor assault. On May 30, 2016, while at a juvenile detention facility for the delinquency charges, Watkins assaulted a corrections officer. In turn, the state charged Watkins with felonious assault on a correctional facility employee.

{¶ 3} The state moved for a mandatory bindover for criminal prosecution of the aggravated robbery charges and for a discretionary bindover for criminal prosecution of the assault charges. On June 8, 2016, the juvenile court held a probable cause hearing on the felony aggravated robbery and misdemeanor assault charges and heard arguments regarding the state's motion for mandatory transfer. As detailed below, the juvenile court found probable cause for the charges. Following the hearing, the juvenile court scheduled a probable cause hearing for the felonious assault charge for June 22, 2016, ordered a mental examination of Watkins, and scheduled an amenability hearing for July 18, 2016. The juvenile court also took Watkins' motion to dismiss the state's motion for mandatory bindover under advisement. At the June 22, 2016 hearing, the juvenile court found probable cause for the felonious assault charge. Additionally, the juvenile court once again ordered a mental examination of Watkins and scheduled an amenability hearing on the felonious assault charge for July 18, 2016. Pursuant to R.C. 2152.12(G), the juvenile court issued written notice of the hearing to the parties.

{¶ 4} On June 30, 2016, Dr. Paul Deardorff conducted the court-ordered mental examination of Watkins. On July 13, 2016, the juvenile court journalized its earlier findings as follows: (1) it determined that Watkins was 16 years old at the time of the commission of the offenses, (2) the offenses would be felonies if committed by an adult, and (3) there was probable cause supporting the charges. However, the juvenile court denied the state's

- 2 -

motion for mandatory bindover because it found Watkins did not have a firearm on or about his person or under his control while committing the offense, and did not display, brandish, indicate possession of or use a firearm to facilitate commission of the aggravated robberies. Rather, the juvenile court found probable cause for complicity to aggravated robbery. The juvenile court ordered a mental examination of Watkins and included notice of the hearing in its entry finding probable cause.

{¶ 5} On July 18, 2016, the juvenile court conducted the amenability hearing. The juvenile court heard testimony from Watkins and Adam Burke, Watkins' probation officer. Burke testified regarding the contact he has had with Watkins, Watkins' history of delinquency, prior dispositions ordered on such delinquency, and Watkins' response to the prior rehabilitative efforts of the juvenile court. During the amenability hearing, the juvenile court acknowledged that a separate mental examination had not been completed in the aggravated robbery case. Upon inquiry by the juvenile court, counsel for both parties agreed to the use of the June 30, 2016 mental examination previously completed by Dr. Deardorff for the felonious assault case.

{¶ 6} On July 25, 2016, the juvenile court issued an entry granting the state's motion for discretionary bindover of the aggravated robbery and assault charges for criminal prosecution. In so doing, the juvenile court noted Watkins was 16 years old at the time of the commission of the offenses, it previously found probable cause for the offenses, and had Watkins committed the offenses as an adult, the offenses would be felonies and a misdemeanor, respectively. In granting the state's motion, the juvenile court considered the factors favoring transfer pursuant to R.C. 2152.12(D) and the factors against transfer pursuant to R.C. 2152.12(E).

{¶ 7} On August 23, 2016, the Clermont County Grand Jury returned a three-count indictment charging Watkins with two felony counts of aggravated robbery with gun

- 3 -

specifications and one count of felonious assault. Watkins entered pleas of no contest to the two counts of aggravated robbery without the gun specifications and the count of felonious assault. Prior to sentencing, Watkins informed the trial court he wished to withdraw his pleas of no contest. The trial court held a hearing on the matter and determined Watkins wished to withdraw his pleas so that he could file a motion to dismiss the charges thereby preserving for appeal his constitutional challenges to the bindover procedure. The trial court determined it was without jurisdiction to review the juvenile court's bindover decision and denied Watkins' motion to withdraw his pleas. The trial court sentenced Watkins to an aggregate eight-year prison term, four-year prison terms on each aggravated robbery count running consecutive to each other and a concurrent twelve-month prison term for the felonious assault count. Watkins timely appealed.

{¶ 8}   Assignment of Error No.1:

{¶ 9}   THE JUVENILE COURT ERRED TO THE PREJUDICE OF APPELLANT BY GRANTING THE STATE'S MOTION TO RELINQUISH JURISDICTION.

{¶ 10} Assignment of Error No. 3:

{¶ 11} THE OPERATION OF R.C. 2152.12 AND 5139.41(C)(2) VIOLATES DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AS PROTECTED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.

{¶ 12} Watkins contends the juvenile court erred by making findings unsupported by the record in its consideration of the factors favoring and against transfer pursuant to R.C. 2152.52(D) and (E). In turn, Watkins argues this failure resulted in the juvenile court abusing its discretion by granting the state's motion for a discretionary bindover. Watkins further asserts the juvenile court's decision to relinquish jurisdiction violated his due process rights pursuant to the United States and Ohio Constitutions because the juvenile court's decision-

making process was "tainted by the court's own funding considerations."

{¶ 13} Juvenile courts have exclusive original jurisdiction over proceedings involving a child alleged to have committed a delinquent act. R.C. 2151.23(A)(1). Therefore, proceedings regarding juveniles must originate in juvenile court and continue in such court unless it relinquishes jurisdiction in accordance with the bindover procedures set forth in R.C. 2152.10 and 2152.12. *State v. J.T.S.*, 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, ¶ 10. The Ohio Revised Code provides two types of bindover procedures, mandatory and discretionary. *State v. D.W.*, 133 Ohio St.3d 434, 2012-Ohio-4544, ¶ 10. The present appeal involves the juvenile court's decision with respect to the latter.

{¶ 14} Pursuant to R.C. 2152.12(B)(3), when deciding whether to transfer a juvenile to the adult court system, the juvenile court must consider and weigh certain statutory factors. The juvenile court has wide latitude in making its determination and we will not reverse its decision absent an abuse of discretion. *State v. Ramirez*, 12th Dist. Butler No. CA2010-11-305, 2011-Ohio-6531, ¶ 12. An abuse of discretion is more than an error of law or judgment. Rather, it suggests the "trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 8. "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14. "As long as the [juvenile] court considers the appropriate statutory factors and there is some rational basis in the record to support the court's findings when applying those factors, we cannot conclude that the [juvenile] court abused its discretion in deciding whether to transfer jurisdiction." *State v. Phillips*, 12th Dist. Clinton No. CA2009-03-001, 2010-Ohio-2711, ¶ 39.

{¶ 15} According to R.C. 2152.12(B),

> * * * after a complaint has been filed alleging that a child is a delinquent child for committing an act that would be a felony if committed by an adult, the juvenile court at a hearing may

transfer the case if the court finds all of the following:

(1) The child was fourteen years of age or older at the time of the act charged.

(2) There is probable cause to believe that the child committed the act charged.

(3) The child is not amenable to care or rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. In making its decision under this division, the court shall consider whether the applicable factors under division (D) of this section indicating that the case should be transferred outweigh the applicable factors under division (E) of this section indicating that the case should not be transferred. The record shall indicate the specific factors that were applicable and that the court weighed.

{¶ 16} Watkins does not contest the juvenile court's findings with respect to R.C. 2152.12(B)(1) and (2), and only challenges the juvenile court's weighing of the factors for consideration as set forth in R.C. 2152.12:

(D) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, in favor of a transfer under that division:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm,

or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

(E) In considering whether to transfer a child under division (B) of this section, the juvenile court shall consider the following relevant factors, and any other relevant factors, against a transfer under that division:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

{¶ 17} "Generally[,] the greater the culpability of the offense, the less amenable will the

juvenile be to rehabilitation." *State v. Watson*, 47 Ohio St.3d 93, 96 (1989). There is no requirement that each statutory factor must be "resolved against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment." *State v. Haynie*, 12th Dist. Clinton No. CA93-12-039, 1995 Ohio App. LEXIS 517, *13 (Feb. 13, 1995); *see also State v. Rice*, 12th Dist. Butler No. CA2016-01-005, 2016-Ohio-5372, ¶ 9 (stating a juvenile court has wide latitude in determining whether a juvenile is amenable to rehabilitation in the juvenile system).

{¶ 18} After a thorough review of the record, we find that the juvenile court did not err in finding that Watkins was not amenable to treatment as a juvenile. The juvenile court found that seven factors weighed in favor of transfer while two weighed against transfer. The juvenile court found the victims suffered physical harm as a result of the offenses because evidence was presented that Watkins and his codefendants physically beat the victims. The juvenile court further found that this physical harm was exacerbated by the victims' vulnerability because Watkins was much larger in stature than the two victims. The juvenile court noted the offenses were committed as part of an organized activity as Watkins and his codefendants planned how the offenses would occur and how to distribute the fruits of the robbery amongst themselves. The juvenile court found Watkins partook in this planning process, received a share of the stolen items, and assisted in hiding the firearm.

{¶ 19} The juvenile court further noted Watkins' extensive juvenile record in the two years preceding the commission of the offenses, including assault, criminal damaging, felonious assault, felonious assault on a police officer, felony theft of a motor vehicle, robbery, and five community control violations. Additionally, Watkins has broken house arrest and removed a Global Positioning System ("GPS") monitoring device. The juvenile court detailed its prior dispositions, including extensive detention time, eleven orders of community control, intensive probation, school-based probation visits, house arrest, GPS

monitoring, various assessments, drug and alcohol monitoring, and suspended Department of Youth Services ("DYS") commitments. Additionally, Watkins failed to engage in court-ordered treatment at the Clermont Recovery Center in addition to other failed treatment opportunities.

{¶ 20} Based on the foregoing, the juvenile court found factors (1) thru (3) and (6) thru (9) favored transfer. The juvenile court found two factors weighed against transfer: (1) Watkins was not the principal offender, and (2) he suffered from bipolar and related disorder and unspecified disruptive, impulse control and conduct disorder. Watkins challenges the juvenile court's findings with respect to factors (8) and (9). Watkins contends the juvenile court's findings that there was not sufficient time to rehabilitate him within the juvenile system, and that Watkins is emotionally, physically, or psychologically mature enough for transfer, are either not supported by the record or are contradicted by the record.

{¶ 21} First, we examine the juvenile court's finding that Watkins is emotionally, physically, or psychologically mature enough for transfer. Watkins correctly asserts that Dr. Deardorff's professional conclusion following his mental examination was that Watkins was "not emotionally, physically, or psychologically mature enough for the transfer." However, Watkins also correctly asserts that the juvenile court is not bound by the findings of an expert. *State v. Rice*, 12th Dist. Butler No. CA2016-01-005, 2016-Ohio-5372, ¶ 16. Rather, as the juvenile court did in this case, it must consider and weigh Dr. Deardorff's report amongst the other evidence presented, and make conclusions pursuant to each relevant factor.

{¶ 22} In support of its finding Watkins was mature enough for transfer, the juvenile court noted Watkins' stature as a tall young man who has inflicted physical harm on both juveniles and adults. Watkins is an "emotionally and behaviorally troubled [juvenile]," yet "was polite and cooperative" and demonstrated "no eccentricities of manner." His "thought

processes were clear and logical and displayed no abnormalities of mental content," and was "alert, responsive and lacked no awareness as to his past and present situation." Watkins' memory, attention, concentration skills, and reasoning abilities appeared intact, and he is of "bright-average intelligence." In regard to his emotional state, Watkins was generally in good spirits, but often anxious.

{¶ 23} Next, we turn to the juvenile court's finding there is not sufficient time to rehabilitate Watkins within the juvenile system. The juvenile court found Watkins exhausted the sanctions available to him within the system. Despite comprehensive efforts by the juvenile court to provide myriad avenues for rehabilitation, Watkins continued to exercise poor judgment coupled with impulse, resulting in "seriously problematic behavior." The juvenile court supported this finding with Watkins prior history with the juvenile court, as detailed above. Specifically, the juvenile court noted the escalation in violence regarding Watkins' criminal behavior over 22 months, including "fights with law enforcement, corrections officers and both children and adults." Therefore, the juvenile court found it could "only conclude that [Watkins] does not want to change, and [it was] unable to offer any sanctions in the time remaining to rehabilitate him within the juvenile system." In making such determination, the juvenile court noted it had considered the opinion of Dr. Deardorff.

{¶ 24} Contrary to Watkins' claims, there is some rational basis in the record to support each individual finding in its analysis of the two disputed factors as well as its consideration of the factors in totality. As discussed above, the juvenile court thoroughly conducted the required statutory analysis, considering each factor in favor of, and against, transfer. While the outcome of the juvenile court's analysis differed from the opinion of Dr. Deardorff, this alone does not constitute an abuse of discretion. *Rice* at ¶ 16 (stating a juvenile court has discretion to assign weight to an expert's report and is not otherwise bound by the expert's opinion). Rather, the record clearly reflects the juvenile court conjunctively

considered the opinion of Dr. Deardorff with the remainder of the evidence in the record to find factors in favor of, and against, transfer. Therefore, the juvenile court did not abuse its discretion in conducting the requisite statutory analysis.

{¶ 25} Watkins contends the juvenile court further erred by failing to consider a DYS commitment. Certainly, in determining whether a juvenile is amenable to rehabilitation in the juvenile system might involve consideration of whether a DYS commitment is a viable dispositional alternative. However, the General Assembly did not enumerate this consideration as a prerequisite to discretionary bindover. Rather, it formulated the factors in R.C. 2152.12(D) and (E) for a juvenile court to weigh when determining whether bindover is appropriate. As we found above, the juvenile court considered the statutory factors and made findings pursuant thereto, which were supported by the record.

{¶ 26} Watkins further contends the juvenile court improperly considered financial considerations to suggest that it ordered a discretionary bindover as opposed to a DYS commitment to avoid any negative financial impact. In support of this argument, Watkins proffered into the record information disclosing that the Clermont County Juvenile Court had not committed a juvenile to DYS in the last five years. However, even accepting Watkins argument as true, Watkins fails to introduce any evidence to indicate financial considerations played any role in the juvenile court's disposition in this case, or over the last five years. Further, Watkins' argument fails to consider that other dispositions have budgetary impacts that may bear less, equal, or more cost than a DYS commitment. Rather, all dispositions have a budgetary impact, and as such, this argument could be made anytime a more restrictive, yet less costly disposition is ordered. Thus, Watkins' argument does not demonstrate the juvenile court's disposition violated his due process rights without evidence that financial considerations were a significant factor in the juvenile court's decision. The mere fact the juvenile court has not made a DYS commitment in five years does not raise the

inference asserted by Watkins that the juvenile court's decision must be financially motivated. Therefore, Watkins' argument is without merit.

{¶ 27} Accordingly, Watkins' first and third assignments of error are overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE JUVENILE COURT ERRED TO THE PREJUDICE OF DEFENDANT BY VIOLATING THE SPECIFIC REQUIREMENTS SET FORTH IN R.C. 2152.12(C) AND (G).

{¶ 30} Watkins asserts the juvenile court erred by not strictly adhering to the parameters of R.C. 2152.12(C) and (G). Specifically, Watkins contends the juvenile court failed to obtain a competent and intelligent waiver from him regarding the mental examination required by R.C. 2152.12(C). Watkins further argues the juvenile court did not adhere to the notice provisions enumerated in R.C. 2152.12(G).

{¶ 31} R.C. 2151.12(C) provides:

> Before considering a transfer under division (B) of this section, the juvenile court shall order an investigation into the child's social history, education, family situation, and any other factor bearing on whether the child is amenable to juvenile rehabilitation, including a mental examination of the child by a public or private agency or a person qualified to make the examination. The investigation shall be completed and a report on the investigation shall be submitted to the court as soon as possible but not more than forty-five calendar days after the court orders the investigation. The court may grant one or more extensions for a reasonable length of time. *The child may waive the examination required by this division if the court finds that the waiver is competently and intelligently made.* Refusal to submit to a mental examination by the child constitutes a waiver of the examination.

(Emphasis added.) Likewise, Juv.R. 30(C) states, in pertinent part:

> In any proceeding in which transfer of a case for criminal prosecution is permitted * * * and in which probable cause is found at the preliminary hearing, the court shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination.

- 12 -

{¶ 32} The juvenile court ordered the mental examination for the assault on a corrections officer case on June 22, 2016 and the mental examination for the aggravated robbery case on July 13, 2016. The former was completed, but not the latter. At the July 18, 2016 amenability hearing for all charges, the juvenile court realized the second mental examination had not been completed. Therefore, the juvenile court inquired of counsel for both parties if they would agree to the juvenile court's consideration of the mental examination completed on June 30, 2016 and a psychological evaluation completed on February 24, 2016. Counsel for both parties agreed. The juvenile court did not directly address the issue with Watkins or inquire of Watkins' counsel as to whether he had consulted with Watkins regarding a waiver of the second mental examination.

{¶ 33} Watkins contends the juvenile court committed prejudicial error by permitting the discretionary bindover proceedings to continue without a second completed mental examination and without a sufficient waiver of such requirement made directly by him. However, Watkins fails to explain how the juvenile court's consideration of the first mental examination and a prior psychological evaluation prejudiced him. This is not a case where no investigation occurred, but rather, a mental examination was prepared three weeks prior to the amenability hearing, which considered the pendency of all relevant charges. *See, e.g.*, *State v. Cooperwood*, 8th Dist. Cuyahoga Nos. 99309, 99310, and 99311, 2013-Ohio-3432, ¶ 26 (finding juvenile court met its statutory bindover requirements, in pertinent part, by ordering one full psychological evaluation of a juvenile for three pending cases and holding a combined amenability hearing). Moreover, neither the record indicates nor does Watkins argue, how a separate mental examination would have rendered anything new or of significance for the juvenile court to consider in light of the timing of the first examination. Therefore, the juvenile court did not err in its consideration of the first examination.

{¶ 34} Watkins further contends the juvenile court failed to adhere to the notice

requirements in R.C. 2152.12(G) for the amenability hearing. R.C. 2152.12(G) provides "[t]he court shall give notice in writing of the time, place, and purpose of any hearing held pursuant to division (A) or (B) of this section to the child's parents, guardian, or other custodian and to the child's counsel at least three days prior to the hearing."

{¶ 35} With respect to R.C. 2152.12(G), the juvenile court issued the required notice of the amenability hearing in the assault on a corrections officer case. However, the juvenile court did not issue notice of the amenability hearing in the same manner for the aggravated robbery case. Rather, the juvenile court provided in its July 13, 2016 entry finding probable cause for the charges in the aggravated robbery case that it would conduct the aggravated robbery amenability hearing on July 18, 2016, in conjunction with the assault on a corrections officer amenability hearing. This entry set forth the time, place, and purpose of the amenability hearing and was served upon Watkins' father. Watkins' mother was not served, but she was imprisoned and unlikely able to attend the hearing. While Watkins' father did not attend the hearing, the record does reflect that he was aware of the hearing and could not attend due to his employment. Watkins' attorney, guardian ad litem, and stepmother all attended the hearing.

{¶ 36} Watkins cites a Fourth District opinion to support his assertion that the juvenile court's notice via entry failed to meet the requirements of R.C. 2152.12(G), and thus, the juvenile court committed reversible error in moving forward with the bindover proceedings. *See generally Turner v. Hooks*, 4th Dist. Ross No. 15CA3477, 2016-Ohio-3083. However, *Turner* is distinguishable from the situation in the present case. In *Turner*, the juvenile court did not provide notice of the amenability hearing to the juvenile's legal custodian, his grandmother, and she did not attend the hearing. *Turner* at ¶ 51. Rather, the juvenile court provided notice to the juvenile's mother who had been previously determined unfit for custody of the juvenile, which the Fourth District determined to be reversible error. *Id.* Unlike *Turner*,

- 14 -

evidence exists in the record that Watkins' attorney, guardian ad litem, stepmother, and father all had notice of the amenability hearing on the pending charges, and all were in attendance for the hearing except his father. Therefore, we find no reversible error in the juvenile court's entry providing notice of the hearing. *State v. Rodriguez*, 12th Dist. Butler No. CA2008-07-162, 2009-Ohio-4460, ¶ 30 (finding no reversible error despite juvenile court's failure to provide written notice pursuant to R.C. 2152.12[G] because the juvenile's legal custodians attended the hearing); *State v. Reynolds*, 10th Dist. Franklin No. 06AP-915, 2007-Ohio-4178, ¶ 14 (finding both parents need not be provided notice pursuant to the statute).

{¶ 37} Accordingly, Watkins' second of assignment of error is overruled.

{¶ 38} Assignment of Error No. 5:

{¶ 39} THE TRIAL COURT COMMITTED ERROR BY DENYING DEFENDANT'S MOTION TO WITHDRAW HIS NO CONTEST PLEA AND BY FAILING TO CONSIDER DEFENDANT'S CHALLENGE TO THE BINDOVER ORDER.

{¶ 40} Watkins argues the trial court possessed the inherent right to determine the constitutional challenges Watkins posed before it. Thus, the trial court erred by refusing to permit Watkins to withdraw his pleas of no contest prior to sentencing in order to consider the constitutional issues.

{¶ 41} As discussed above, the juvenile court considered Watkins' various constitutional challenges to the bindover procedures before granting the state's motion for discretionary bindover. In turn, the juvenile court transferred Watkins' case to the general division of the Clermont County Court of Common Pleas. After the trial court accepted Watkins' pleas of no contest, but before sentencing, Watkins requested to withdraw his pleas to provide the trial court an opportunity to review the constitutional arguments he posed before the juvenile court. The trial court denied Watkins' request and proceeded to the sentencing phase of the case.

{¶ 42} Despite Watkins' argument, we find the trial court did not err in denying his motion to withdraw his pleas of no contest. "The Ohio Supreme Court has held that a defendant may not immediately appeal a juvenile court's order transferring jurisdiction of his case to the common pleas court, but must wait to appeal any error stemming from the order following a final judgment in the common pleas court." *State v. Amos*, 1st Dist. Hamilton No. C-150265, 2016-Ohio-1319, ¶ 26, *citing In re Becker*, 39 Ohio St.2d 84, 87 (1974). Thus, a defendant cannot challenge "in the common pleas court the juvenile court's bindover order because [a] common pleas court ha[s] no jurisdiction to review the juvenile court's bindover order for error." *Amos* at ¶ 27, citing *State v. Washington*, 2d Dist. Montgomery No. 20226, 2005-Ohio-6546, ¶ 8; *State v. Whiteside*, 6 Ohio App.3d 30, 37 (3d Dist.1982).

{¶ 43} Therefore, because the trial court did not have jurisdiction to review the juvenile court's bindover order for error – constitutional or otherwise – it did not err in denying Watkins' motion to withdraw his pleas of no contest to provide time for such review.

{¶ 44} Accordingly, Watkins' fifth assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE TRIAL COURT'S SENTENCE ORDERING DEFENDANT TO SERVE TWO CONSECUTIVE TERMS OF FOUR YEARS VIOLATES DEFENDANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS AND STATE LAW.

{¶ 47} Watkins contends the trial court erred in sentencing him in the same manner as an adult for the crimes he committed at 16 years of age. Specifically, Watkins claims the trial court "[did n]ot consider * * * youth as a factor in its sentence * * *, constitut[ing] cruel and unusual punishment in violation of [Watkins'] rights established under the Eighth Amendment to the United States Constitution and violat[ing] Ohio's sentencing statutes to wit: R.C. 2929.11 [thru 2929].14."

{¶ 48} R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *accord State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing."

{¶ 49} As explained in *Marcum*, "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *Marcum* at ¶ 9. Rather, pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). A sentence is not "clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8, citing *State v. Moore*, 12th Dist. Clermont No. CA2014-02-016, 2014-Ohio-5191, ¶ 6.

{¶ 50} After thoroughly reviewing the record, we find no error in the sentence imposed by the trial court. Watkins does not specifically challenge the trial court's consideration of the principles and purposes of R.C. 2929.11, the factors listed in R.C. 2929.12, the imposition of postrelease control, or that the sentence was within the permissible statutory range. Rather, Watkins claims the trial court fashioned a sentence without considering his age at the time of commission of the offenses. Therefore, we consider Watkins argument as claiming the trial court failed to consider a relevant factor pursuant to R.C. 2929.12(B).

{¶ 51} Contrary to Watkins' assertion, the trial court specifically stated it considered

Watkins' age in imposing his sentence.  In pertinent part, the trial court stated:

> Here's the last thing I want to say to you, just so your dad knows.
> I took your age in consideration, because with your record if – if I
> had had all of you, it might have been different.  I gave you what
> I gave you partly because of your age, and partly because they
> got what they got.  * * * So you may walk out of here, and Mr.
> Hunt may think I didn't think about your age.  I'm telling you, I
> thought about your age, because I could have given you more,
> Mr. Watkins, and felt fine about it, and I didn't.

Therefore, not only did the trial court specifically inform Watkins it considered his age in formulating Watkins' sentence, the trial court sentenced him more leniently than it would have had Watkins been an adult at the time of commission of the offenses.  Thus, Watkins' argument is clearly unsupported by the record and without merit.  Furthermore, Watkins' sentence was not clearly and convincingly contrary to law because the trial court sentenced him within the statutory range, considered the principles and purposes of felony sentencing in R.C. 2929.11 and the factors in R.C. 2929.12, and made the requisite findings for the imposition of consecutive sentences in R.C. 2929.14.

{¶ 52} Accordingly, Watkins' fourth assignment of error is overruled.

{¶ 53} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.