[Cite as *State v. Loveless*, 2019-Ohio-4830.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-03-028 |
| | : | O P I N I O N |
| - vs - | | 11/25/2019 |
| | : | |
| PAUL A. LOVELESS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2009CR00548

Vincent D. Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Timothy Young, Ohio Public Defender, Lauren Hammersmith, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Paul A. Loveless, appeals the decision of the Clermont County Court of Common Pleas denying his motion to vacate his 2009 conviction for one count of tampering with evidence, one count of pandering obscenity, and five counts of unauthorized use of a computer. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} The facts of this case are generally not in dispute. At 10:44 a.m. on May 1, 2006, John Burns, the Manager of Technology Operations at the Great Oaks Institute of Technology and Career Development ("Great Oaks"), received an anonymous three-page e-mail from a Great Oaks student claiming he had discovered certain vulnerabilities in the Great Oaks' computer network that allowed him unauthorized access to confidential information stored on the network.[1] The student also claimed that he was sharing this information with Burns in order to assist Great Oaks in fixing the security issues with its network. Upon receiving this e-mail, Burns contacted the Sharonville Police Department to report the security breach. There is no dispute that the student who authored this e-mail later identified himself as Loveless. There is also no dispute that Loveless, who was then 17 years old, agreed to meet with Burns the next day to discuss how he was able to gain access to the Great Oaks' network.

{¶ 3} At 1:37 p.m. on May 2, 2006, Burns, Detective Aaron Blasky with the Sharonville Police Department, and Officer Steve Burgess with the Miami Township Police Department, as well as two Great Oaks officials, administrator Dan Cox and counselor Robin Scallon, met with Loveless in a Great Oaks' conference room.[2] During this meeting, Detective Blasky informed Loveless that they were there "to find out what went on" and "need[ed] to talk" about his "great sleuthing" into the Great Oaks' computer network. Loveless responded "yep" and explained that "he would fully cooperate and be honest."[3]

---

1. The e-mail included several screenshots showing the student had access to payroll records, employee account numbers, social security numbers, and routing information stored on the Great Oaks' network. The e-mail also included a screenshot showing the student had access and the ability to change student grades.

2. Officer Burgess was at that time the Great Oaks' school resource officer.

3. These statements are taken from a narrative supplement drafted by Officer Burgess on May 5, 2006.

{¶ 4} Loveless thereafter admitted to accessing the Great Oaks' network by using an administrator account login name and password that he had obtained by watching a Great Oaks technician log on to a classroom computer.[4] Loveless also admitted that after he obtained the login name and password that he enabled a program that allowed him to log on to the Great Oaks' network from home. Following these admissions, Loveless demonstrated how he could gain access into the Great Oaks' network "within seconds" of logging on to the network. There is no dispute that Loveless made these admissions after signing a waiver of his *Miranda* rights.[5] There is also no dispute that Loveless made these admissions after Detective Blasky told Loveless that although "this could lead to criminal charges" that he was not under arrest.

{¶ 5} After meeting with Loveless in the Great Oaks' conference room for approximately two hours, officials from Great Oaks contacted Loveless' parents. Upon being contacted by Great Oaks officials, Loveless' father agreed to meet with Detective Blasky and Officer Burgess at the Loveless residence. Shortly thereafter, at 4:23 p.m., Detective Blasky transported Loveless home in his police cruiser. Once there, Loveless showed Officer Burgess the three computers that the Loveless family kept in their home; one in Loveless' parents' first-floor bedroom and two in Loveless' bedroom in the basement. During this time, Officer Burgess waited upstairs for Loveless' father to arrive home.

{¶ 6} Upon his arrival home, Loveless' father spoke upstairs with Detective Blasky and Officer Burgess. During this conversation, there is no dispute that Loveless was left alone downstairs in his basement bedroom with two of the family's three computers. After speaking with Loveless' father, Detective Blasky went downstairs to the basement and

---

4. The record indicates this technician logged on to the classroom computer by using an "on screen keyboard on the large screen in the front of the class."

5. The record indicates that Detective Blasky read Loveless his *Miranda* rights at 2:05 p.m., 28 minutes after Loveless first entered the Great Oaks' conference room for questioning.

asked Loveless to join them upstairs. Detective Blasky indicated that Loveless was at that time acting "more nervous than before[.]"

{¶ 7} Once Loveless was back upstairs, Loveless' father "agreed to fully cooperate" with the investigation. To that end, Loveless' father signed a consent form that gave Detective Blasky and Officer Burgess consent to search each of the Loveless family's three computers. Loveless' father signed this consent form at 4:45 p.m., approximately three hours after Detective Blasky and Officer Burgess had first met with Loveless in the Great Oaks' conference room. While signing this consent form, the record indicates that Loveless' father told Detective Blasky and Officer Burgess that he "completely understood the concern of Great Oaks."

{¶ 8} On May 4, 2006, Officer Burgess contacted Loveless' probation officer and advised him that there was an open investigation into Loveless gaining unauthorized access to the Great Oaks' computer network.[6] Later that day, at 12:49 p.m., Officer Burgess received a telephone call from Loveless. During this call, Loveless informed Officer Burgess that his probation officer had called him and informed him that he was being placed on the "Detention Roster."[7] Loveless then asked Officer Burgess if he "could be looking at felony charges." Officer Burgess responded that the investigation was still ongoing but that it was certainly a "possibility."

{¶ 9} At 9:30 a.m. on May 11, 2006, Loveless came into Officer Burgess' office "upset and crying." Once there, Loveless told Officer Burgess that he was "just given 80 days out of school and will probably now go to jail."[8] Rather than discussing the ongoing

---

6. This information is taken from two narrative supplements drafted by Officer Burgess on May 5 and 8, 2006.

7. We note that while there are some references in the record to Loveless' earlier legal trouble, the record does not contain any specific information as to why Loveless was at that time on probation.

8. These statements are taken from a narrative supplement drafted by Officer Burgess on May 12, 2006.

investigation and the details of the case, Officer Burgess responded and advised Loveless that he needed "to get his [life] on track" and do "the right things." A half-hour later, at 10:00 a.m., Loveless' parents arrived and joined Loveless in Officer Burgess' office.

{¶ 10} After Loveless' parents arrived, Officer Burgess "explained to them the case was still under investigation and may take a while" but that Loveless "could be looking at felony charges." After explaining to Loveless the serious nature of the charges levied against him, Officer Burgess asked Loveless if he would like to write a statement. Although initially somewhat reluctant, Loveless nevertheless agreed to write a statement for Officer Burgess. While writing this statement, the record indicates that Loveless became visibly upset and told Officer Burgess that he just wanted "to be honest." There is no dispute that Loveless wrote this statement after again signing a waiver of his *Miranda* rights.

{¶ 11} At 9:02 a.m. on May 19, 2006, Burns, Detective Blasky, and Officer Burgess met to discuss the progress of the ongoing investigation into Loveless' unauthorized access onto the Great Oaks' computer network. During this meeting, Detective Blasky advised Burns and Officer Burgess that "there is much more than he anticipated that [Loveless] accessed and did."[9] This includes Detective Blasky's discovery that Loveless had also gained unauthorized access to a company's computer network located in Michigan. Burns further advised Detective Blasky and Officer Burgess that Great Oaks was still in the process of bringing in computer consultants to check its computer network and "do the needed maintenance."

{¶ 12} Approximately one month later, on June 16, 2006, Detective Blasky began a forensic examination of the computer taken from Loveless' parents' first-floor bedroom. During this examination, Detective Blasky discovered accounts belonging to both Loveless

---

9. This information is taken from a narrative supplement drafted by Officer Burgess on May 22, 2006.

and Loveless' parents. Detective Blasky also found a folder that contained "evidence of .mpg (movie) files of apparent minors engaged in sexual acts." After discovering these video files, Detective Blasky spoke with Officer Burgess. A search warrant was then obtained for all three computers taken from the Loveless family's residence.

{¶ 13} Once the search warrant was obtained, Detective Blasky met with Loveless' parents at the Miami Township Police Department and "informed them of this development, providing them with copies of the warrants." After speaking with Loveless' parents, Detective Blasky continued his forensic examination of the computer taken from Loveless' parent's first-floor bedroom. This examination uncovered "remnants of approximately 15 movies depicting minors engaged in sexual acts" that had been deleted "one year prior which coincides with the last login date of [Loveless'] account."

{¶ 14} On June 27, 2006, Detective Blasky conducted a forensic examination on one of the two computers taken from Loveless' basement bedroom. Detective Blasky identified this computer as "Homemade Computer SCSI Hard drive from [Loveless'] Room." This examination resulted in Detective Blasky discovering several now deleted files containing child pornography. Detective Blasky also discovered evidence that these files had been deleted while Loveless was left alone in the basement when he and Officer Burgess were upstairs speaking to Loveless' father on the afternoon of May 2, 2006.

{¶ 15} Due to the complex nature of this case, the record indicates that Detective Blasky did not conduct a forensic examination of the other computer taken from Loveless' basement bedroom until nearly a year later on June 22, 2007. Detective Blasky identified this computer as "IBM Computer from [Loveless'] Room." Similar to the first computer taken from Loveless' basement bedroom, the record indicates this examination also resulted in Detective Blasky discovering a number of files that related to either child pornography or computer hacking. This includes one file named "R@ygold – 12yo girl lets 11yo boy cum."

{¶ 16} On August 3, 2007, Office Burgess drafted a narrative supplement to his original May 2, 2006 police report. As part of this supplemental narrative, Officer Burgess stated that he had "kept in touch" with Detective Blasky regarding the "very complex" investigation into Loveless having gained unauthorized access to the Great Oaks' computer network and subsequent discovery of child pornography on the Loveless family's three computers. Officer Burgess also stated that both of these matters were still "currently under investigation." To that end, and as part of this ongoing investigation, Officer Burgess stated that he had met with Detective Blasky in late June of 2007. During this meeting, Detective Blasky stated that he briefed Officer Burgess on the status of the ongoing investigation and "the downloads that were leading to the investigation."

{¶ 17} Continuing this narrative supplement, Officer Burgess described how the investigation was progressing as follows:

> August 1, 2007 Det. Blasky met with Ofc. Burgess at the Miami Township Police Department with the complete investigation and reviewed same. Det. Blasky gave Ofc. Burgess (2) investigation notebooks, one for the PD and one for the Prosecutor's Office.
>
> August 2, 2007 Ofc. Burgess e-mailed Great Oaks Director of Technology, John Burns and requested a detailed report and restitution request for the Loveless case.
>
> August 3, 2007 Ofc. Burgess spoke with Clermont County Prosecutor, Jay Mathers and briefed him of the investigation findings. A meeting will be set in the future.

Officer Burgess concluded his supplemental narrative by noting that the "[c]ase remains open."

{¶ 18} Over 18 months later, in April of 2009, the case was assigned to Detective Robert Bradford with the Miami Township Police Department. After being assigned the case, Detective Bradford met with Kevin Miles, an Assistant Prosecutor with the Clermont County Prosecutor's Office. During this meeting, which occurred on April 30, 2009,

- 7 -

Assistant Prosecutor Miles advised Detective Bradford of the facts and circumstances surrounding the ongoing investigation into Loveless' unauthorized access into the Great Oaks' computer network and "pandering nudity oriented matter involving a juvenile." To further this ongoing investigation, Assistant Prosecutor Miles asked Detective Bradford to "gather the images in question for review" and meet with him again after reviewing the file.

{¶ 19} The following month, in May of 2009, Detective Bradford asked Detective Blasky to provide him with the files that were recovered from the Loveless family's three computers. This includes the two computers taken from Loveless' basement bedroom. Detective Blasky responded that he would have the files available for Detective Bradford "as soon as he could create a disk." Later that month, Detective Blasky provided Detective Bradford with a disk that contained the various photographs and videos of minors engaged in sexual acts that were recovered from the Loveless family's three computers. Upon receiving this disk, Detective Bradford reviewed the files provided to him by Detective Blasky. This review resulted in Detective Bradford locating 26 files that contained child pornography and several other files that "depicted child pornography by the file names."

{¶ 20} After reviewing the files provided to him by Detective Blasky, Detective Bradford met with Assistant Prosecutor Miles again and advised him of his findings. Upon being so advised, Assistant Prosecutor Miles asked Detective Bradford to contact Detective Blasky to determine exactly how many times Loveless had gained access into the Great Oaks' computer network. Assistant Prosecutor Miles also asked Detective Bradford to interview Loveless and Loveless' parents again. Assistant Prosecutor Miles further advised Detective Bradford that, in accordance with R.C. 2151.23(I), Loveless "would have a grand jury hearing for indictment after he turned 21 years old [two months later on July 31, 2009], because he was a juvenile when this offense took place." Pursuant to R.C. 2151.23(I), an offender who is 21 years old or older may be prosecuted as an adult and subject to adult

sentences regardless of when the act was committed so long as the act would be charged as a felony if committed by an adult and "the person [had not been] taken into custody or apprehended for that act until after the person attains twenty-one years of age[.]"

{¶ 21} On June 4, 2009, Loveless went to the Miami Township Police Department to obtain a copy of an unrelated crash report. While there, Detective Bradford asked Loveless if they could talk. Loveless agreed. Detective Bradford and Loveless then went into an interview room located just off of the police department's front lobby. Once in the interview room, Detective Bradford advised Loveless that he did not need to speak with him and that he was free to leave at any time. Upon being so advised, Detective Bradford asked Loveless about the child pornography that Detective Blasky had discovered on the three computers taken from the Loveless family's residence. Loveless denied all knowledge about the child pornography found on those three computers. Loveless instead advised Detective Bradford that he used to buy and sell computers so the child pornography must have belonged to someone else. Loveless also denied any knowledge about the child pornography that was deleted from one of the two computers taken from his basement bedroom while Detective Blasky and Officer Burgess were upstairs talking to his father on the afternoon of May 2, 2006.

{¶ 22} At 11:10 a.m. on July 15, 2009, Detective Bradford met with Loveless' father to discuss the allegations against Loveless and the child pornography located on the Loveless family's three computers. During this meeting, Loveless' father told Detective Bradford that Loveless had prior legal trouble relating to computer hacking and other sexually related offenses. This includes Loveless having a "problem" with child pornography. Loveless' father also advised Detective Bradford that Loveless "has had so

much counseling in the past that he did not know if this was still a problem for him."[10] Loveless' father further told Detective Bradford that Loveless "would fix and refurbish computers" and that Loveless may not have been "as careful as he should about that." Loveless' father additionally advised Detective Bradford that Loveless, who had been diagnosed with bipolar disorder and ADHD, had previously attempted to "set up a porn site and solicit girls" before this more recent incident involving child pornography.

{¶ 23} The record indicates Loveless' father also showed concerns that the police might have thought the child pornography belonged to him. So, in order to distance himself from those allegations, Loveless' father advised Detective Bradford that Loveless had vast knowledge of computers and computer systems, thereby making it relatively easy for Loveless to crack computer passwords. Loveless' father also told Detective Bradford that he had already told Detective Blasky that it was "[Loveless] on his computers and that he was not doing this." Loveless' father further told Detective Bradford that he wanted to help Loveless but that he was "unaware of anything that had ever happened to [Loveless] that would cause this type of behavior." Loveless' father additionally advised Detective Bradford that he was unaware if Loveless had ever been abused and denied that any abuse had ever occurred in their home.

{¶ 24} Later that day, Detective Bradford drafted a narrative supplement outlining his conversations with Loveless and Loveless' father. Detective Bradford also noted that he had prepared a discovery packet that included a disk containing the child pornography discovered on the Loveless family's three computers. Detective Bradford concluded this narrative statement by noting that he was recommending Loveless be indicted for 26 counts of second-degree felony pandering sexually oriented material involving a minor in violation

10. As discussed more fully below, these statements are taken from a memorandum drafted by Detective Bradford on the same day that he spoke with Loveless' father, July 15, 2009.

of R.C. 2907.322(A)(1), 26 additional counts of third-degree felony pandering sexually oriented material involving a minor in violation of R.C. 2907.322(A)(5), one count of third-degree felony tampering with evidence in violation or R.C. 2921.12, and five counts of fifth-degree felony unauthorized use of a computer in violation or R.C. 2913.04(B). After drafting this narrative supplement, Detective Bradford left a message for Assistant Prosecutor Miles advising him that the discovery packet was ready to be dropped off at the Clermont County Prosecutor's Office.

{¶ 25} On August 5, 2009, approximately three weeks after Detective Bradford spoke to Loveless' father, and five days after Loveless turned 21 years old, the Clermont County Grand Jury returned a 26-count indictment against Loveless. Somewhat different than the charges recommended by Detective Bradford, the indictment charged Loveless with ten counts of second-degree felony pandering sexually oriented material involving a minor in violation of R.C. 2907.322(A)(1), ten counts of fourth-degree felony pandering sexually oriented material involving a minor in violation of R.C. 2907.322(A)(5), one count of third-degree felony tampering with evidence in violation of R.C. 2921.12(A)(1), and five counts of fifth-degree felony unauthorized use of a computer in violation of R.C. 2913.04(B). The charges were based on the facts set forth above that were alleged to have occurred between January 18, 2006 and May 2, 2006 when Loveless was 17 years old.

{¶ 26} On October 21, 2009, Loveless entered a plea agreement and pled guilty to one count of third-degree felony tampering with evidence in violation of R.C. 2921.12(A)(1), one count of fifth-degree felony pandering obscenity in violation of R.C. 2907.32(A)(1), and five counts of fifth-degree felony unauthorized use of a computer in violation R.C. 2913.04(B). Approximately three months later, on January 7, 2010, the trial court held a sentencing hearing and sentenced Loveless to three years of community control. The trial court also classified Loveless as a Tier I sex offender and ordered Loveless to pay Great

Oaks $11,945 in restitution. Loveless thereafter violated his community control three times, which ultimately resulted in him serving two years in prison. These violations included Loveless having possession of two computers and a cell phone that he then used to access the Internet and view pornography, Loveless submitting three positive drug screens, and Loveless admitted heroin use, among others.

{¶ 27} On July 13, 2018, over nine years after he entered his guilty plea, Loveless filed a motion to vacate his conviction. Loveless supported his motion based on two central arguments; (1) preindictment delay and (2) the trial court's alleged improper exercise of subject matter jurisdiction to convict and sentence him for crimes that he committed prior to turning 18. Taking the matter under advisement, the trial court issued a decision denying Loveless' motion on February 26, 2019. In so holding, the trial court found that by pleading guilty Loveless had waived any argument that his conviction should be vacated due to preindictment delay. The trial court also found that it had properly exercised subject matter jurisdiction over Loveless' conviction even though the conviction was based on crimes that Loveless committed prior to turning 18 since he was neither "taken into custody" nor "apprehended" as those terms are used in R.C. 2151.23(I) prior to his 21st birthday.

**Appeal**

{¶ 28} Loveless now appeals the trial court's decision denying his motion to vacate his conviction, raising the following single assignment of error for review.

{¶ 29} THE CLERMONT COUNTY COURT OF COMMON PLEAS ERRED [WHEN] IT FAILED TO VACATE PAUL LOVELESS' CONVICTIONS AS VOID BECAUSE THE COMMON PLEAS COURT LACKED JURISDICTION TO CONVICT HIM OF THAT OFFENSE IN 2009 AND BECAUSE THE STATE FAILED TO TIMELY PROSECUTE PAUL.

{¶ 30} In his single assignment of error, Loveless argues that the trial court erred by

denying his motion to vacate his conviction. We disagree.

{¶ 31} Loveless initially argues that the trial court erred by denying his motion since the trial court lacked subject-matter jurisdiction to convict him for crimes that he committed prior to turning 18. Loveless instead argues that it was the juvenile court that had exclusive subject-matter jurisdiction to punish him for those offenses. We find no merit to Loveless' claim.

{¶ 32} Pursuant to R.C. 2151.23(A)(1), "[j]uvenile courts have exclusive original jurisdiction over proceedings involving a child alleged to have committed a delinquent act." *State v. Watkins*, 12th Dist. Clermont No. CA2017-03-013, 2018-Ohio-46, ¶ 13. The term "child" generally means "a person who is under eighteen years of age[.]" R.C. 2152.02(C)(1). "Therefore, absent a proper bindover procedure, 'the juvenile court has the exclusive subject-matter jurisdiction over any case concerning a child who is alleged to be a delinquent' that 'cannot be waived.'" *State v. Isse*, 12th Dist. Fayette No. CA2017-06-012, 2018-Ohio-799, ¶ 11, quoting *State v. Wilson*, 73 Ohio St.3d 40 (1995), paragraphs one and two of the syllabus ("[t]he exclusive subject matter jurisdiction of the juvenile court cannot be waived"). "A conviction is void where the court of common pleas lacks subject matter jurisdiction to convict the defendant due to the defendant's age at the time of the offense." *Id.*, citing *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, ¶ 8, fn. 1, citing *Wilson* at 44.

{¶ 33} There is an exception, however, that limits the juvenile court's exclusive subject-matter jurisdiction. *Bear v. Buchanan*, 156 Ohio St.3d 348, 2019-Ohio-931, ¶ 5. As noted above, this exception is found in R.C. 2151.23(I). Pursuant to that statute:

> If a person under eighteen years of age allegedly commits an act that would be a felony if committed by an adult and if the person is not taken into custody or apprehended for that act until after the person attains twenty-one years of age, the juvenile court does not have jurisdiction to hear or determine any portion

of the case charging the person with committing that act. In those circumstances, divisions (A) and (B) of section 2152.12 of the Revised Code do not apply regarding the act, and the case charging the person with committing the act shall be a criminal prosecution commenced and heard in the appropriate court having jurisdiction of the offense as if the person had been eighteen years of age or older when the person committed the act. All proceedings pertaining to the act shall be within the jurisdiction of the court having jurisdiction of the offense, and that court has all the authority and duties in the case that it has in other criminal cases in that court.

{¶ 34} "By enacting R.C. 2151.23(I), the General Assembly intended for offenders 21 years of age to be prosecuted as adults and subject to adult sentences, regardless of when their acts were committed." *State v. Stidam*, 4th Dist. Adams No. 15CA1014, 2016-Ohio-7906, ¶ 58. This, as the Ohio Supreme Court explained, effectively removes "anyone over 21 years of age from juvenile-court jurisdiction, regardless of the date on which the person allegedly committed the offense." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 14 This is because "R.C. 2151.23(I) is written in the negative, and clearly states that a juvenile court is divested of jurisdiction when certain requirements are met." *In re H.C.*, 8th Dist. Cuyahoga No. 102601, 2015-Ohio-3676, ¶ 10. Those requirements are as follows:

> (1) The defendant must have been under eighteen years of age at the time of the offense;
>
> (2) The alleged offense would be a felony if committed by an adult; and
>
> (3) The defendant must not have been "taken into custody or apprehended" for the offense prior to turning twenty-one years of age.

*State v. Taylor*, 8th Dist. Cuyahoga No. 105322, 2017-Ohio-8066, ¶ 4.

{¶ 35} "The legislature chose to authorize prosecution of those [offenders over the age of 21] in the general division because persons who commit offenses as juveniles but who are not prosecuted until after they turn 21 are not likely to be amenable to the juvenile

- 14 -

justice system." *State v. Fortson*, 11th Dist. Portage No. 2011-P-0031, 2012-Ohio-3118, ¶ 43, citing *State v. Schaar*, 5th Dist. Stark No. 2003CA00129, 2004-Ohio-1631, ¶ 29. To hold otherwise, thereby permitting a juvenile court to retain subject-matter jurisdiction over a person who is 21 years old or older, the juvenile court "would find its dispositional options profoundly limited." *Walls*, 2002-Ohio-5059 at ¶ 40. This makes "the age of the offender *upon apprehension* the touchstone of determining juvenile-court jurisdiction[.]" (Emphasis sic.) *Id.* at ¶ 14.

{¶ 36} There is no dispute that Loveless was under the age of 18 at the time he committed the above named offenses and that the offenses, if committed by an adult, would all be charged as felonies. The only question is whether Loveless was "taken into custody or apprehended" as those terms are used in R.C. 2151.23(I) prior to turning 21. "The fact that the legislature chose to use the phrase, 'taken into custody or apprehended' in the disjunctive and as opposed to the phrase 'taken into custody' alone, indicates that the legislature recognized a difference between being in 'custody' and being 'apprehended.'" *Lindstrom*, 2011-Ohio-6755 at ¶ 22.

{¶ 37} As it relates to whether an offender was "taken into custody" under R.C. 2151.23(I), R.C. 2151.31(A) and Juv.R. 6(A) provide that a child may be "taken into custody" in accordance with a court order, the "laws of arrest," or by a law enforcement officer where "[t]here are reasonable grounds to believe that the child committed a delinquent act and that taking the child into custody is necessary to protect the public interest and safety."[11] This implies that an offender has been "taken into custody" under R.C. 2151.23(I) when the offender has been physically detained "by virtue of lawful authority" for "judicial or penal

---

11. Both R.C. 2151.31(A) and Juv.R. 6(A) list several other ways in which a child may be "taken into custody" none of which are applicable here.

safe-keeping." *Lidstrom* at ¶ 20, citing *Rarey v. Schmidt*, 115 Ohio St. 518, 522 (1926).

{¶ 38} On the other hand, unlike where a child has been "taken into custody," it has been determined that an offender has been "apprehended" under R.C. 2151.23(I) when a complaint has been filed in the juvenile court and a summons has been issued for the offender's arrest if the state had so requested. *Lindstrom* at ¶ 29. This is true despite the fact that the offender was not physically taken into custody. *Id.* Therefore, as properly explained by the trial court, the term "apprehended" would "cover complaints filed and served, but not necessarily accompanied by physical seizure," whereas the phrase "taken into custody" would "apply to physical seizure in accordance with official action."

{¶ 39} Loveless claims that he was "taken into custody" as that term is used in R.C. 2151.23(I) prior to turning 21 when "he was brought into his school's conference room for questioning" on the afternoon of May 2, 2006. However, as the record indicates, there was no court order mandating Loveless be taken into custody at the time he was brought into the Great Oaks' conference room for questioning. Loveless was also not taken into custody by being placed under arrest either before, during, or immediately after he was questioned by police in the Great Oaks' conference room. Loveless was instead taken into custody years later after he was indicted and a warrant was issued for his arrest on August 5, 2009, five days after Loveless turned 21 on July 31, 2009.

{¶ 40} The record further indicates that there was no reason to believe that it was necessary to physically detain Loveless by taking him into custody or place him under arrest in order to protect the public interest or public safety on the afternoon of May 2, 2006. This holds true even after Detective Blasky drove Loveless home in his police cruiser and spoke with Loveless' father. This is because Loveless was at that time being investigated based solely on allegations that he had gained unauthorized access onto the Great Oaks' computer network and not for possessing child pornography. Therefore, contrary to

Loveless' claim otherwise, Loveless was not "taken into custody" as that term is used in R.C. 2151.23(I) when he was questioned by police in the Great Oaks' conference room on the afternoon of May 2, 2006.

{¶ 41} Although this court's analysis is based on the meaning of the phrase "taken into custody" under R.C. 2151.23(I), we find the same to be true when considering whether Loveless was "in custody" and subject to a "custodial interrogation" under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). "[C]ourts have previously rejected the argument that a school is necessarily a coercive setting for a juvenile to be questioned by police." *State v. Spahr*, 2d Dist. Miami Nos. 2008 CA 21 and 2008 CA 22, 2009-Ohio-4609, ¶ 15. Therefore, when faced with facts similar to the case at bar, it has been determined that "the act of law enforcement officers questioning minors while they are at school does not amount to custodial interrogation where there is no evidence that the student was under arrest or told he was not free to leave." *In re Haubeil*, 4th Dist. Ross No. 01CA2631, 2002-Ohio-4095, ¶ 16, citing *In re Bucy*, 9th Dist. Wayne No. 96CA0019, 1996 Ohio App. LEXIS 4842 (Nov. 6, 1996) (student was not in custody when he was interviewed by a police officer in his school's conference room where the student was told that he was not under arrest and was free to leave to which the student responded that he wanted to speak with the officer because he had "nothing to hide"). Accordingly, even when analyzing this case under *Miranda*, Loveless' claim that he was "taken into custody" when he was questioned by police in the Great Oaks' conference room on the afternoon of May 2, 2006, or at any time immediately thereafter, lacks merit.

{¶ 42} Loveless also claims that he was "apprehended" as that term is used in R.C. 2151.23(I) prior to turning 21 since the police "knew his identity, his whereabouts, and the nature of his offenses before he turned 21." However, contrary to Loveless' claim, the term "apprehended" means something more than "a mere thought or perception that a person

named as the perpetrator of an offense *could be* arrested or detained."  (Emphasis sic.).

*Taylor*, 2017-Ohio-8066 at ¶ 8 (appellant was not apprehended by police even though police had "become aware" of appellant, "perceived" appellant, and had "positively identified" appellant as the offender before he turned 21 years old).

{¶ 43} Again, as properly explained by the trial court, the term "apprehended" would "cover complaints filed and served, but not necessarily accompanied by physical seizure." Therefore, as discussed more fully above, not only was Loveless not "taken into custody" prior to turning 21, Loveless was also not "apprehended" until after he was indicted and a warrant was issued for his arrest on August 5, 2009, five days after his 21st birthday on July 31, 2009.  *See State v. Steele*, 146 Ohio Misc. 2d 23, 2008-Ohio-2467, ¶ 6 (C.P.) (offender was not "apprehended" as that term is used in R.C. 2151.23(I) until after the offender was indicted).    Accordingly, because Loveless was neither "taken into custody" nor "apprehended" as those terms are used under R.C. 2151.23(I) prior to turning 21, Loveless' claim that the trial court erred by denying his motion to vacate his conviction for lack of subject matter jurisdiction is without merit.

## Preindictment Delay

{¶ 44} Loveless additionally argues that the trial court erred by denying his motion to vacate his conviction since he was subject to preindictment delay that violated his right to due process.  While there may be some question as to why the investigation lasted for over three years, it is nevertheless well established that "a guilty plea waives any alleged due process violation arising from preindictment delay."  *State v. Thomas*, 8th Dist. Cuyahoga No. 105824, 2019-Ohio-1372, ¶ 6, citing *State v. Brown*, 8th Dist. Cuyahoga No. 104085, 2017-Ohio-184, ¶ 9 ("[appellant's] guilty plea waives any alleged due process violation arising from preindictment delay"); *State v. Shivers*, 8th Dist. Cuyahoga No. 105621, 2018-Ohio-99, ¶ 11 ("appellant's guilty plea resulted in a waiver of any alleged due process

- 18 -

violation arising from preindictment delay"); *State v. Cordell*, 2d Dist. Greene No. 2009 CA 57, 2010-Ohio-5277, ¶ 8 (appellant's guilty plea "effectively waived" any due process violation arising from preindictment delay). Therefore, just as the trial court found, "by pleading guilty, Loveless waived his right to challenge his conviction based upon a preindictment delay argument." Accordingly, even though the record is not explicit in why the investigation lasted as long as it did, because Loveless waived any alleged due process violation arising from preindictment delay by entering a guilty plea, Loveless' claim that the trial court erred by denying his motion to vacate his conviction due to preindictment delay also lacks merit.

**Conclusion**

{¶ 45} The trial court did not err by denying Loveless' motion to vacate his conviction resulting from his guilty plea to one count of tampering with evidence, one count of pandering obscenity, and five counts of unauthorized use of property. Therefore, finding no merit to any of the argument raised herein, Loveless' single assignment of error challenging the trial court's decision denying his motion to vacate his conviction is overruled.

{¶ 46} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.