[Cite as *State v. Wells*, 2021-Ohio-2585.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109787 |
| v. | : | |
| ANTROINE WELLS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** July 29, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637865-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly N. Mason, Eben McNair, and Stephanie Farah, Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Antroine Wells ("Wells"), appeals from his convictions and sentence. He raises the following assignments of error for review:

1. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motion for acquittal.

2. The convictions were against the manifest weight of the evidence.

3. Appellant's constitutional rights were violated when the charges were not dismissed when he was not afforded a speedy trial.

4. Appellant's sentence is contrary to law because the record does not support the imposition of consecutive sentences.

5. The trial court erred by failing to merge all allied offenses of similar import and by imposing separate sentences for allied offenses which violated appellant's state and federal rights to due process and protections against double jeopardy.

{¶ 2} After careful review of the record and relevant case law, we affirm Wells's convictions and sentence. The matter is remanded for the court to issue a nunc pro tunc sentencing journal entry to reflect the imposition of consecutive sentences.

## I. Procedural and Factual History

{¶ 3} On February 20, 2018, Wells was named in a six-count indictment in Cuyahoga C.P. No. CR-18-626004-A, charging him with rape in violation of R.C. 2907.02; kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification; aggravated burglary in violation of R.C. 2911.11(A)(1); burglary in violation of R.C. 2911.12(A)(2); intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1); and theft in violation of R.C. 2913.02(A)(1). The indictment stemmed from alleged incidents involving Wells's ex-girlfriend, Jane Doe, on January 29, 2018, and February 2, 2018.

{¶ 4} On March 6, 2018, the date scheduled for Wells's arraignment, a capias was issued for his arrest. Wells was not brought into custody until February 8, 2019.

{¶ 5} On March 14, 2019, Wells was reindicted in Cuyahoga C.P. No. CR-19-637865-A. The 12-count indictment charged Wells with rape in violation of R.C. 2907.02(A)(2) (Count 1); kidnapping in violation of R.C. 2905.01(A)(4), with a sexual motivation specification (COunt 2); aggravated burglary in violation of R.C. 2911.11(A)(1) (Count 3); burglary in violation of R.C. 2911.12(A)(2) (Count 4) intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1) (Count 5); theft in violation of R.C. 2913.02(A)(1) (Count 6); aggravated robbery in violation of R.C. 2911.01(A)(1) (Count 7); criminal damaging or endangering in violation of R.C. 2909.06(A)(1) (Count 8); aggravated burglary in violation of R.C. 2911.11(A)(2) (Count 9); intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1) (COunt 10); retaliation in violation of R.C. 2921.05(B) (Count 11); and tampering with evidence in violation of R.C. 2921.12(A)(2) (Count 12).

{¶ 6} The new indictment was filed by the state to account for alleged acts committed against Jane Doe and a second victim, T.L., during the time period Wells avoided custody in Case No. CR-18-626004-A. Upon the filing of the new criminal indictment, the state dismissed Case No. CR-18-626004-A without prejudice.

{¶ 7} In March 2020, the matter proceeded to a jury trial on Counts 1-6 and 9-12 of the indictment. Counts 7 and 8, the only charges pertaining to T.L., were bifurcated and were to be addressed at a later date.

{¶ 8} At trial, Jane Doe testified that she and Wells were previously in a romantic relationship that spanned approximately four years. Jane Doe ended their relationship in the "summer of 2017." (Tr. 208.) When the relationship ended, Jane Doe avoided Wells and ignored his phone calls and text messages.

{¶ 9} On January 29, 2018, Jane Doe arrived home from work and noticed the smell of cigar smoke. Jane Doe testified that the smell of the cigar smoke caused her to believe that Wells had been inside her home. When Jane Doe went upstairs to ensure her home was secure, Wells suddenly came out of a bedroom and attacked her. According to Jane Doe, Wells then pinned her down and vaginally raped her. Jane Doe testified that she began "screaming telling him to stop, don't do it." (Tr. 222.)

{¶ 10} After the alleged sexual assault occurred, Jane Doe took a shower and went to a previously scheduled doctor's appointment. At that time, Jane Doe reported the sexual assault to her doctor. Thereafter, Jane Doe went to the emergency room for examination and the completion of a rape kit. Jane Doe also filed a formal report with the city of Bedford Police Department. Jane Doe testified that once she reported the criminal incident to the police, she began receiving concerning phone calls and text messages from Wells.

{¶ 11} In November 2018, Wells contacted Jane Doe through a social-media platform using the alias "Chris." Chris offered to pay Jane Doe money for a nude photograph. Jane Doe accepted the offer and scheduled a time for Chris to come to her home to complete the agreed upon transaction. At the time scheduled for Chris's

arrival, Jane Doe opened her front door and encountered Wells. Wells was holding a stun gun and directed Jane Doe to go back inside her home. Wells then forced Jane Doe to sign a recantation letter while pointing the stun gun at her. Wells also made threatening statements to Jane Doe, warning her that people he owed money to would "come after [her] and [her] kids." (Tr. 239.) The recantation letter, which was subsequently mailed to the city of Bedford Police Department, stated, in relevant part:

> I, [Jane Doe], would like to recant my statement of accusing Antroine Wells of rape, kidnapping, theft, and burglary. That statement is 100 percent false. After reflecting on the incident I am admitting I was wrong. I made an honest mistake. I only told the detectives those things because I was afraid and nothing was done. I thought he would hurt me because of how I hurt him, but he didn't, even what I accused him of. But the truth is he did not rape me nor break into my home. I truly and sincerely apologize to everyone involved in this matter. It was an honest mistake that I regret.

{¶ 12} Jane Doe reiterated that she did not write the recantation letter and that Wells did commit the offenses alleged in the indictment. Jane Doe explained that she did not immediately notify the police that Wells forced her to sign the recantation letter because "he said if I called the police and tell them that he was there, he would find out." (Tr. 242.)

{¶ 13} Detective Shawn Klubnik ("Det. Klubnik") of the city of Bedford Police Department testified that he was assigned to investigate the sexual assault allegations levied against Wells. In the course of his investigation, Det. Klubnik interviewed Jane Doe, photographed her injuries, reviewed certain text messages sent to Jane Doe's cell phone, and collected relevant medical records and physical

evidence. Det. Klubnik confirmed that he received a typed recantation letter that contained Jane Doe's signature. Det. Klubnik also testified that he received a phone call from an individual claiming to be Jane Doe's brother. This individual, who identified himself as "Brian," was calling to verify that the police received Jane Doe's recantation letter. Det. Klubnik testified that he found the phone call to be suspicious. When he contacted Jane Doe about the suspicious phone call, Jane Doe confirmed that she does not have a brother named Brian. Det. Klubnik further testified that Wells had a copy of the recantation letter on his person at the time of his apprehension in February 2019.

{¶ 14} At the conclusion of the state's case, defense counsel moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court denied the motion and the defense presented its case.

{¶ 15} Wells testified on his own behalf. Wells confirmed that he was romantically involved with Jane Doe for several years. He testified that he moved out of the residence he shared with Jane Doe in the beginning of 2018 due to her infidelity. Although their relationship had ended, Wells explained that he continued to have intercourse with Jane Doe in exchange for money. With respect to the incident alleged to have occurred on January 29, 2018, Wells maintained that he and Jane Doe engaged in consensual intercourse. He testified that Jane Doe was upset when he declined to give her money on this occasion. According to Wells, Jane Doe became increasingly irate when he finally confessed to her that he had more

biological children than he had previously disclosed.  Wells opined that Jane Doe responded to his lies by pursuing criminal allegations against him.

{¶ 16} Wells testified that after the argument in January 2018, he did not have contact with Jane Doe until they met at his uncle's house in May 2018.  Wells stated that he and Jane Doe resolved their differences and engaged in sexual intercourse.  Wells testified that Jane Doe also invited him to her house on November 27, 2018.  He explained that he and Jane Doe had reached an agreement via a text-message conversation whereby Jane Doe agreed to provide Wells nude photographs of herself in exchange for $500 or $600.  Defense counsel introduced "screenshots" of the alleged electronic communications.  Wells denied communicating with Jane Doe through a social-media platform.  He further denied communicating with Jane under the alias, Chris.

{¶ 17} Regarding the meeting on November 27, 2018, Wells testified that he and Jane Doe engaged in consensual sex and that once again, she became upset when he did not have sufficient money to pay her.  However, he maintained that he did not possess a stun gun, did not harm Jane Doe in any way, and did not force her to sign a recantation letter that day.  Wells explained that he and Jane Doe had previously agreed to draft the recantation letter when they reconciled earlier that year.  Thus, he testified that Jane Doe signed the recantation letter before the November 2018 interaction and that he carried a copy of the letter in his pocket in order to prove, if necessary, that her allegations were false.

{¶ 18} Wells's uncle, Rayford Wells ("Rayford"), testified that he was familiar with Jane Doe based on her relationship with Wells. Relevant to this case, Rayford testified that he observed Jane Doe with Wells in May or June of 2018. Rayford stated that he was confident he observed them together in 2018 because he was disappointed that Wells was socializing with someone who had pursed sexual assault charges against him.

{¶ 19} At the conclusion of trial, the jury found Wells guilty of intimidation of a crime victim or witness, retaliation, and tampering with evidence as charged in Counts 10, 11, and 12 of the indictment. Wells was found not guilty of the remaining counts pertaining to Jane Doe.

{¶ 20} Prior to trial on Counts 7 and 8 of the indictment, the state agreed to dismiss Count 8 of the indictment and amend Count 7 to a charge of attempted robbery in exchange for a plea of guilty. In accordance with the plea agreement, Wells withdrew his former plea of not guilty and entered a plea of guilty to attempted robbery in violation of R.C. 2923.02 and 2911.02(A)(3).

{¶ 21} In May 2020, the trial court sentenced Wells to 18 months in prison on Count 7, 36 months in prison on Count 10, 24 months in prison on Count 11, and 24 months in prison on Count 12. The trial court ordered the sentences imposed on Counts 7, 10, and 11 to run consecutively for an aggregate 78-month prison term.

{¶ 22} Wells now appeals from his convictions and sentence.

## II. Law and Analysis

## A. Sufficiency of the Evidence

{¶ 23} In his first assignment of error, Wells argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because his convictions were not supported by sufficient evidence.

{¶ 24} Crim.R. 29(A) provides for an acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." A sufficiency challenge essentially argues that the evidence presented was inadequate to support the jury verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). '"The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 25} It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also*

*State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

{¶ 26} Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be "'more certain, satisfying and persuasive than direct evidence.'" *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 27} In this case, Wells was convicted of retaliation in violation of R.C. 2921.05(B), which provides, "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges."

{¶ 28} After careful review of the record, we find a reasonable trier of fact could conclude beyond a reasonable doubt that Wells purposely retaliated against Jane Doe by force and unlawful threat of harm because she pursued criminal charges against him following the incident on January 29, 2018. The evidence presented at trial demonstrated that in response to Jane Doe's allegations of rape,

kidnapping, and burglary, Wells carried out a plot via social media and arrived at Jane Doe's home under false pretenses. He then proceeded to brandish a stun gun and force his way into Jane Doe's home while verbally threatening physical harm to Jane Doe and her children. These threats were directly communicated to Jane Doe and were unquestionably related to her pending criminal allegations against Wells. Viewing this evidence in a light most favorable to the prosecution, we find there was sufficient evidence to support a finding of guilt on the offense of retaliation.

{¶ 29} Wells was also convicted of intimidation of a crime victim or witness in violation of R.C. 2921.04(B)(1). The statute provides that:

> (B) No person, knowingly and by force or by unlawful threat of harm to any person or property or by unlawful threat to commit any offense or calumny against any person, shall attempt to influence, intimidate, or hinder any of the following persons:
>
> (1) The victim of a crime * * * in the filing or prosecution of criminal charges * * *.

{¶ 30} The statute "requires only an 'attempt to influence, intimidate, or hinder,' and it is not required that the victim actually feel intimidated." *State v. Kilton*, 8th Dist. Cuyahoga No. 106864, 2019-Ohio-87, ¶ 8, citing *State v. Serrano*, 2016-Ohio-4691, 69 N.E.3d 87, ¶ 44 (8th Dist.). "The term 'threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 39. "An 'unlawful threat of harm' requires more than

just a threat, and is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *Kilton* at ¶ 9, citing *Cress* at ¶ 41-42.

{¶ 31} Our review reflects that the state presented sufficient evidence in support of Wells's intimidation of a crime victim conviction. In this case, the evidence shows that Wells arrived at the victim's home and forced her to sign the recantation letter under the threat of bodily harm. Once the letter was signed, Wells advised Jane Doe that he would find out if she contacted the police about the circumstances surrounding the recantation letter. As stated, R.C. 2921.04(B) requires only an "attempt to influence, intimidate, or hinder," and it is not required that the victim actually feel intimidated. Nonetheless, Jane Doe testified that she only signed the recantation letter so that Wells would leave her home. Under these circumstances, a rational trier of fact could determine from the evidence that Wells knowingly attempted to intimidate the victim by unlawful threat of harm and forced her to sign a recantation letter in an effort to hinder the prosecution of criminal charges. Accordingly, any rational trier of fact could have found the essential elements of intimidation of a witness proven beyond a reasonable doubt.

{¶ 32} Finally, Wells was convicted of tampering with evidence in violation of R.C. 2921.12(A)(2). Pursuant to R.C. 2921.12(A)(2),

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: * * * (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation,

or with purpose to corrupt the outcome of any such proceeding or investigation.

{¶ 33} In this case, Jane Doe testified that Wells arrived at her home with a typed recantation letter that she was forced to sign. Subsequently, the letter was mailed to Det. Klubnik, unquestionably in an effort to mislead the detective and to corrupt the outcome of the criminal investigation. The substance of the recantation letter demonstrated Wells's knowledge of the ongoing criminal investigation. Moreover, although Wells's fingerprints were not recovered on the recantation letter that arrived at the city of Bedford Police Department, we find there was circumstantial evidence that Wells made the document knowing it to be false. Here, Jane Doe confirmed that she did not draft the recantation letter and that the information contained therein was not true. In addition, a copy of the recantation letter was found in Wells's possession at the time of his arrest. Viewing the evidence in a light most favorable to the prosecution, we find there was sufficient evidence to support the finding of guilt on the offense of tampering with evidence.

{¶ 34} Within this assignment of error, Wells further contends that each of his convictions were supported by insufficient evidence because Jane Doe's testimony was self-serving and lacked credibility. We note, however, that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. Franklin No. 08AP-668, 2009-Ohio-

754, ¶ 4.  Accordingly, issues of credibility are better suited for a challenge to the manifest weight of the evidence, as addressed below.

{¶ 35} Wells's first assignment of error is overruled.

## B.  Manifest Weight of the Evidence

{¶ 36} In his second assignment of error, Wells argues that his convictions were against the manifest weight of the evidence.

{¶ 37} A manifest weight challenge questions whether the state met its burden of persuasion.  *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12.  A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 38} In challenging the weight of the evidence supporting his convictions, Wells argues that Jane Doe's testimony was not credible as "reflected in the jury's verdict of not guilty on Counts 1, 2, 3, 4, 5, 6, and 9." Wells suggests that his version of the events was more credible and that the evidence demonstrates Jane Doe voluntarily met with him and understood she was communicating with him, and not

an individual named Chris, at the time she arranged to exchange nude photographs for money. Wells further contends that Jane Doe's testimony concerning Wells's alleged threats and the circumstances surrounding her signing of the recantation letter was not credible given the fact that she did not contact the police about the alleged events.

{¶ 39} Based on the record before this court, we cannot say that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. In this case, Jane Doe was thoroughly cross-examined by defense counsel regarding her version of the incidents occurring in January and November of 2018. She was questioned at length regarding her alleged interaction with "Chris" and the basis of her decision to not contact the police after Wells forced her to sign the recantation letter. She reiterated her position that she did not knowingly contact or exchange messages with Wells through text messages or on a social-media platform between January 29, 2018 and November 27, 2018. (Tr. 265; 296.) She explained that she did not know Wells was using an alias during the electronic communications until he arrived at her home at the time she had arranged to meet Chris. In addition, Jane Doe testified during her direct examination that she did not immediately contact the police following the November 2018 incident because Wells had warned her that he would know if she contacted the police. (Tr. 243.)

{¶ 40} Under these circumstances, we find the jury was presented with all relevant evidence and was free to find Jane Doe's version of the events occurring on

November 27, 2018, to be more credible. As recognized by this court, a conviction is not against the manifest weight of the evidence simply because the trier of fact chose to believe the state's version of events over that of the defendant's. *State v. Williams*, 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, ¶ 67, citing *State v. Williams*, 10th Dist. Franklin No. 08AP-719, 2009-Ohio-3237, ¶ 17. Moreover, the fact that the jury found Wells not guilty of several offenses does not undermine the confidence in the jury's resolution of the remaining counts. As this court has explained:

> juries can reach inconsistent verdicts for any number of reasons, including mistake, compromise, and leniency. * * * [I]t would be incongruous for a defendant to accept the benefits of an inconsistent verdict without also being required to accept the burden of such verdicts.

*State v. Taylor*, 8th Dist. Cuyahoga No. 89629, 2008-Ohio-1626, ¶ 10. Consequently, "courts have consistently rejected the argument that inconsistent verdicts would render a defendant's conviction against the manifest weight of the evidence." *State v. Jones,* 8th Dist. Cuyahoga No. 108050, 2019-Ohio-5237, ¶ 33, citing *State v. Norman*, 10th Dist. Franklin No. 10AP-680, 2011-Ohio-2870, ¶ 14; *State v. Gravelle*, 6th Dist. Huron No. H-07-010, 2009-Ohio-1533, ¶ 76-77; *State v. Parker*, 8th Dist. Cuyahoga No. 90298, 2008-Ohio-3538, ¶ 22-25; and *State v. King*, 5th Dist. Guernsey No. 09 CA 000019, 2010-Ohio-2402, ¶ 32-34.

{¶ 41} In this case, the jury's finding of guilt on Counts 10, 11, and 12 related to a series of acts that transpired on a date that was separate and distinct from the offenses Wells was found not guilty of committing. The trier of fact was free to

believe all of Jane Doe's testimony regarding the November 27, 2018 incident, while simultaneously finding Wells not guilty of the offenses that stemmed from a prior incident. Accordingly, we find Wells's convictions are not against the manifest weight of the evidence.

{¶ 42} Wells's second assignment of error is overruled.

## C. Speedy Trial

{¶ 43} In his third assignment of error, Wells argues he was not afforded a speedy trial in violation of his statutory and constitutional rights.

{¶ 44} As an initial matter, we note that Wells filed a pro se "motion to dismiss for violation of constitutional rights/amendments," wherein he claimed that he was entitled to a speedy trial. The record reflects that Wells was represented by appointed counsel at the time he filed his pro se motion. Hybrid representation is not allowed; therefore, the trial court was unable to consider his motion. *State v. Davis*, 8th Dist. Cuyahoga No. 105129, 2017-Ohio-8479, ¶ 18 (a defendant has the right to counsel or the right to act pro se; however, a defendant does not have the right to both, simultaneously). Thus, Wells's failure to properly file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal. *State v. Harris*, 2018-Ohio-578, 107 N.E.3d 658, ¶ 59 (8th Dist.); *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 37; *State v. Simms*, 10th Dist. Franklin Nos. 05-AP-806 and 05AP-807, 2006-Ohio-2960, ¶ 10 (by not raising his speedy-trial claim in the trial court, "appellant waived all but plain error on his statutory claims").

{¶ 45} Moreover, Wells does not allege plain error on appeal. Thus, we need not consider his argument even for plain error. *Id.* at ¶ 60; *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17-20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *Wright v. Ohio Dept. of Jobs & Family Servs.*, 9th Dist. Lorain No. 12CA010264, 2013-Ohio-2260, ¶ 22 (when a claim is forfeited on appeal and the appellant does not raise plain error, the appellate court will not create an argument on the appellant's behalf). Assuming, however, the speedy trial issue was properly before us, Wells's argument would still fail.

{¶ 46} The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. The Ohio Constitution, Article I, Section 10, guarantees an accused this same right. *State v. MacDonald*, 48 Ohio St.2d 66, 68, 357 N.E.2d 40 (1976). Although the United States Supreme Court declined to establish the exact number of days within which a trial must be held, it recognized that states may prescribe a reasonable period of time consistent with constitutional requirements. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In response to this authority, Ohio enacted R.C. 2945.71, which designates specific time requirements for the state to bring an accused to trial.

{¶ 47} When reviewing a speedy trial question, an appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. *State v.*

*Ferrell*, 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882, ¶ 20. Furthermore, this court must construe the statutes strictly against the state when reviewing the legal issues in a speedy trial claim. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶ 48} Pursuant to R.C. 2945.71(C)(2), the state must bring a defendant to trial on felony charges within 270 days of arrest. Under the "triple count provision" contained in R.C. 2945.71(E), each day a defendant is held in jail in lieu of bail counts as three days in the speedy-trial time calculation. However, in *MacDonald*, the Ohio Supreme Court held the triple count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." *Id.* at syllabus. As such, when an accused is also being held in jail on a probation violation holder, the triple count provision does not apply. *State v. Martin*, 56 Ohio St.2d 207, 383 N.E.2d 585 (1978). Relevant to this case, it is undisputed that Wells was serving community control sanctions in an unrelated case at the time the offenses were committed against Jane Doe in this matter.

{¶ 49} The statutory speedy-trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy-trial time. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 44. Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *Cook* at 55-56. If the state has violated a

defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. 2945.73(B).

{¶ 50} Speedy-trial time is tolled by certain events delineated in R.C. 2945.72. Such tolling events include "[a]ny period of delay occasioned by the neglect or improper act of the accused," any period of delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused, and any continuances granted upon the accused's own motion," and a "period of any reasonable continuance granted" upon any other party's motion. R.C. 2945.72(D), (E), and (H). A defendant's demand for discovery tolls the speedy-trial time until the state responds to the discovery, or for a reasonable time, whichever is sooner. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E).

{¶ 51} On appeal, Wells contends that because he was not brought to trial until approximately 754 days after his initial arrest, he has established a prima facie case for discharge. We agree; but find the state has demonstrated that substantial tolling events operated to extend Wells's speedy trial time.

{¶ 52} In this case, Wells was arrested on February 13, 2018. When he failed to appear before the court, a capias was issued on March 6, 2018. Wells, however, was not brought into custody until February 8, 2019, nearly 11 months later. Excluding the date of arrest, approximately 20 untolled calendar days expired during this lengthy period of time. *See* R.C. 2945.72(D).

{¶ 53} After Wells was brought into custody, he was arraigned on February 12, 2019. The following day, defense counsel filed a request for discovery, bill of particulars, and notice of specific intention to use evidence. The state responded to Wells's discovery request on March 4, 2019. Approximately five untolled calendar days expired during this period of time. *See Cleveland v. Smerglia*, 8th Dist. Cuyahoga No. 108745, 2020-Ohio-3181, ¶ 19 ("A discovery motion tolls the speedy trial time.").

{¶ 54} On March 5, 2019, the state sought a continuance to file a new indictment against Wells. On March 14, 2019, Wells was reindicted in Case No. CR-19-637865-A, and he was arraigned on March 20, 2019. Approximately 21 untolled calendar days expired until defense counsel filed a request for discovery on March 25, 2019.

{¶ 55} The state responded to the discovery request on April 30, 2019. However, while the discovery request was outstanding, Wells filed separate motions to continue on April 2, 2019, and April 9, 2019. Thereafter, Wells filed additional motions to continue on April 30, 2019, May 14, 2019, June 3, 2019, June 17, 2019, and June 25, 2019. On July 3, 2019, Wells filed a motion to remove appointed counsel due to ineffective assistance of counsel. On July 8, 2019, defense counsel withdrew as counsel and new counsel was appointed. No speedy trial days accumulated during this time period. *See* R.C. 2945.72(H).

{¶ 56} On July 9, 2019, the matter was continued until July 18, 2019, at the request of Wells. Approximately one untolled calendar day expired during this period of time.

{¶ 57} On July 18, 2019, the matter was continued until August 1, 2019, at the request of Wells. On August 1, 2019, the matter was continued until August 15, 2019, at the request of Wells. On August 15, 2019, the matter was continued until September 5, 2019, at the request of Wells. On September 5, 2019, the matter was continued until September 16, 2019, at the request of Wells. No speedy trial days accumulated during this time period. *See* R.C. 2945.72(H).

{¶ 58} On September 16, 2019, the matter was set for trial to begin on September 23, 2019. However, on September 23, 2019, the trial was continued until December 2, 2019, at the request of Wells due to defense counsel's scheduling conflict. Approximately eight untolled calendar days ran during this period of time. *See* R.C. 2945.72(H).

{¶ 59} On December 2, 2019, the trial was continued until January 21, 2020, at the request of Wells. A pretrial was held on January 10, 2o20. At the request of Wells, an additional pretrial was scheduled for January 27, 2020, and trial was continued until for March 9, 2020. Wells's jury trial began on March 9, 2020. No speedy trial days accumulated during this time period. *See* R.C. 2945.72(H).

{¶ 60} Based on the foregoing, it is evident that the delay in the proceedings was substantially caused by Wells's avoidance of his capias and the numerous motions filed at the request of Wells. Even without addressing the ambiguity in this

record concerning the presence of a valid probation holder in Wells's unrelated criminal case, we find no violation of Wells's statutory speedy trial rights. Assuming the triple-count provision of R.C. 2945.71(E) is applicable for each day Wells was held in jail in lieu of bond, we find Wells was brought to trial well within 270 days of his arrest in light of the significant tolling events.

{¶ 61} Wells also argues his constitutional speedy trial rights were violated in this matter. Citing the significant length of time between his arrest and trial, Wells contends that the reasons for the delay are not clear and prejudiced his ability to present an adequate defense at trial.

{¶ 62} In determining whether a constitutional speedy trial violation exists, we balance four factors "the length of the delay, the reason for the delay, the accused's assertion of his or her right to a speedy trial, and the prejudice to the accused as a result of the delay." *Barker,* 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. This court has explained "[t]he first factor, the length of the delay, is a 'triggering mechanism,' determining the necessity of inquiry into the other factors." *State v. Robinson*, 8th Dist. Cuyahoga No. 105243, 2017-Ohio-6895, ¶ 9, quoting *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290 (1997), citing *Barker* at 530. The defendant must make a threshold showing of a "presumptively prejudicial" delay to trigger an analysis of the other *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Post-accusation delay approaching one year is generally found to be presumptively prejudicial. *Doggett* at fn. 1.

{¶ 63} Regarding first factor above, the record supports Wells's assertion that there was more than one-year delay. However, with regard to factor two — the reason for the delay — it is readily apparent that most of the delay between Wells being charged and tried was the result of his own motions and conduct. As stated, Wells sought several continuances and did not appear before the court for nearly 11 months following the issuance of a capias.

{¶ 64} With regard to the third factor, we find that a properly framed challenge to Wells's constitutional right to a speedy trial was not filed on Wells's behalf while he was represented by competent counsel. And, Wells has not directed this court to a portion of the record to suggest otherwise. "'The constitutional right to a speedy trial was not intended as a shield to the guilty, the protection of which might be invoked by sitting silently back and allowing the prosecution to believe that the accused is acquiescing in the delay.'" *Id.* at ¶ 12, quoting *Partsch v. Haskins*, 175 Ohio St. 139, 140, 191 N.E.2d 922 (1963).

{¶ 65} Finally, with regard to the fourth factor, we see no evidence of prejudice to Wells. The Ohio Supreme Court has explained that the prejudice factor in the analysis "should be assessed in the light of the interests of defendants[,] which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182, 33 L.Ed.2d 101. The three interests are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Long*, Slip Opinion No. 2020-Ohio-5363, ¶ 22. The third interest — the impact of the delay on the ability of

the defendant to prepare his defense — is the greatest concern because it "'skews the fairness of the entire system.'" *Id.*

**{¶ 66}** In this case, Wells argues that he was prejudiced by the delay because he lacked "resources outside of his jail" and was unable to "fully assist in his defense" during the time period he remained incarcerated. However, Wells does not identify how his pretrial incarceration or delay in trial hindered his ability to gather evidence, contact witnesses, or prepare for his defense. His argument on appeal merely references "potentially" exculpatory evidence. Thus, Wells's asserted difficulty in preparing a defense is hypothetical and relies on nothing more than mere speculation, which is "not sufficient to show prejudice." *State v. Hubbard*, 12th Dist. Butler No. CA2014-03-063, 2015-Ohio-646, ¶ 24 (finding defendant's speculation witnesses may have moved without any knowledge to verify, or even suggest, the witnesses moved, insufficient to show prejudice). Accordingly, we find Wells has failed to show any reasonable prejudice sufficient to suggest that this *Barker* factor should weigh in his favor.

**{¶ 67}** Based on our examination of the relevant *Barker* factors, we cannot conclude Wells's constitutional right to a speedy trial was violated. Wells's third assignment of error is overruled.

### D. Consecutive Sentences

**{¶ 68}** In his fourth assignment of error, Wells argues the trial court erred by imposing consecutive sentences.

**{¶ 69}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

**{¶ 70}** R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 71}** Conformity with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). To this end, a reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *Bonnell* at ¶ 37.

**{¶ 72}** In this case, the trial court made the following findings when imposing consecutive sentences:

> The Court has considered the seriousness and recidivism factors and the purposes and principles of our sentencing statutes. [The prosecutor] in her colloquy indicated several factors that are more serious. Mr. Wells was on community control [when these] offenses occurred. It should be noted that even though this is one case number, these are basically two different cases, two separate incidents involving two separate women and the justice system itself. Tampering with evidence and retaliation and intimidation of a crime victim are all crimes not just against an individual, but against the justice system.

> Mr. Wells, so you were on probation in Case 599179. I find you to be in violation of your probation. You were capias on that. I am terminating your community control or probation in that case.

> * * *

You do have a history of violence. Two of your prior cases were of a violent nature. Robbery, the base count in this case was a crime of violence. I've considered all those factors.

\* \* \*

I do note that in imposing consecutive sentences that a consecutive term is necessary to punish the defendant here and to protect the public. Mr. Wells has — this is his, I believe fifth case. He did commit this crime against these two women while on community control sanction, and I do find that his criminal history is necessary to protect the public and that six and a half years is not disproportionate to the course of conduct here.

(Tr. 663-664.)

{¶ 73} On appeal, Wells does not dispute that the trial court made the first and third findings for imposing consecutive sentences under R.C. 2929.14(C)(4). With respect to the second finding, however, Wells argues that the trial court "[did] not address the requirement that the court find the sentence is not disproportionate to the offender's conduct *and* is also not disproportionate to the danger posed to the public." (Emphasis sic.) Accordingly, Wells asserts that the trial court's findings were insufficient to warrant the imposition of consecutive sentences.

{¶ 74} After careful review, we agree that the trial court did not make an explicit, specific finding that the imposition of a consecutive sentence was not disproportionate to the danger Wells poses to the public. However, the trial court's statements during the sentencing hearing, when viewed in their entirety, clearly indicate that the trial court considered proportionality with respect to both the seriousness of Wells's conduct and the danger he posed to the public. Here, the trial

court detailed its consideration of the relevant seriousness factors and described the need to protect the public based on the violent nature of Wells's conduct in this case as well as his history of criminal violence. The court further emphasized that Wells committed the instant offenses while under community control sanctions in a prior case involving allegations of physical abuse. Under these circumstances, we are able to discern from the trial court's statements that the trial court found both that consecutive sentences are not disproportionate to the seriousness of Wells's conduct and are not disproportionate to the danger he poses to the public. *See State v. Hollis*, 8th Dist. Cuyahoga No.109092, 2020-Ohio-5258, ¶ 23, citing *State v. Hicks*, 8th Dist. Cuyahoga No. 107055, 2019-Ohio-870, ¶ 14-16, citing *State v. Gonzalez*, 8th Dist. Cuyahoga No. 105952, 2018-Ohio-1302, ¶ 11-13; *State v. McGowan*, 8th Dist. Cuyahoga No. 105806, 2018-Ohio-2930, ¶ 19-25 (the trial court's failure to explicitly make the proportionality finding did not preclude the imposition of consecutive sentences where trial court's statements during the sentencing hearing, when viewed in their entirety, indicated that the court considered proportionality both with regard to the seriousness of defendant's conduct and the danger he posed to the public); *State v. Morris*, 2016-Ohio-7614, 73 N.E.3d 1010, ¶ 27-34 (8th Dist.) (the proportionality finding could be discerned from the record and the trial court's statement that "consecutive sentences in this matter are necessary to protect and punish [and] are not disproportionate" combined with its statements regarding defendant's criminal history, the danger defendant posed to the public in failing to report his whereabouts, and the fact the crimes at issue were committed while

defendant was on postrelease control for an "identical offense"); *State v. Amey*, 8th Dist. Cuyahoga Nos. 103000 and 103001, 2016-Ohio-1121, ¶ 15-19 (trial court's statement that consecutive sentences "would not be disproportionate" combined with statements regarding defendant's extensive criminal history and the trial court's statement that defendant had not "responded favorably to sanctions previously imposed" satisfied proportionality finding); *State v. Cooperwood*, 8th Dist. Cuyahoga Nos. 99309, 99310 and 99311, 2013-Ohio-3432, ¶ 40 (the trial court's statement that consecutive sentences "would not be disproportionate," when viewed "in its context," constituted a proportionality finding that complied with R.C. 2929.14(C)(4)); *State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 18-23 (8th Dist.) (although the trial court only made a specific finding that consecutive sentences were not disproportionate to the seriousness of defendant's conduct, the trial court's statements on the record at sentencing, when viewed in their entirety, clearly indicated that the court considered proportionality with regard to both the seriousness of defendant's conduct and the danger the defendant posed to the public). Accordingly, we find the trial court made the necessary findings for imposing consecutive sentences pursuant to R.C. 2929.14(C)(4).

{¶ 75} Wells further contends that the imposition of consecutive sentences was not supported by the record. Specifically, Wells asserts that consecutive sentences "are in excess of what is necessary to incapacitate [him], deter him from committing future crimes and to rehabilitate him." In support of this argument,

Wells asserts that the trial court did not "adequately explain why [his] conduct required the imposition of consecutive sentences."

{¶ 76} After reviewing the record, we cannot say that the record clearly and convincingly does not support the trial court's findings under R.C. 2929.14(C)(4). As stated, the trial court is not required to state any reasons to support its consecutive-sentencing findings. *Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, at ¶ 176, citing *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 37. Thus, contrary to Wells's position on appeal, the trial court had no obligation to explain the basis of its consecutive sentence findings. Nevertheless, the record before this court reflects that, consistent with the court's findings, Wells has a criminal history involving crimes of violence and that he committed criminal acts in this case that involved underlying threats of violence. Regarding the offenses committed against Jane Doe, the record reflects that Wells engaged in calculated conduct that was intended not only to scare or intimidate Jane Doe, but was also intended to interfere with the ongoing criminal investigation and the judicial process. In addition, the record reflects that Wells committed the acts supporting his convictions in this case while under community control sanctions. Under these circumstances, we find that the record before this court supports the trial court's R.C. 2929.14(C)(4) findings.

{¶ 77} Because the trial court made the requisite findings during the sentencing hearing under R.C. 2929.14(C)(4) and the findings are clearly and

convincingly supported by the record, the trial court did not err in imposing consecutive sentences.

{¶ 78} Finally, Wells argues that the trial court's imposition of consecutive sentences was contrary to "the felony sentencing guidelines," R.C. 2929.11 and 2929.12. Relying on this court's en banc decision in *State v. Jones*, 8th Dist. Cuyahoga Nos. 103290 and 103302, 2018-Ohio-498, that was subsequently reversed by the Ohio Supreme Court, Wells contends that the purposes and principles of felony sentencing "weigh in favor of a much lesser sentence." According to Wells, "imposing a six and a half year prison term does not serve the purposes of felony sentencing and is in excess of what is necessary to punish the offender and protect society."

{¶ 79} Pursuant to R.C. 2929.11(A), the three overriding purposes of felony sentencing are "to protect the public from future crime by the offender and others," "to punish the offender," and "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden of state or local government resources." Additionally, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 80} Furthermore, in imposing a felony sentence, "the court shall consider the factors set forth in [R.C. 2929.12(B) and (C)] relating to the seriousness of the

conduct [and] the factors provided in [R.C. 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism * * *." R.C. 2929.12.

{¶ 81} A sentence is contrary to law if the sentence falls outside the statutory range for the particular degree of offense or the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11, and the seriousness and recidivism factors set forth in R.C. 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13. Unlike R.C. 2929.14(C)(4), governing consecutive sentences, R.C. 2929.11 and 2929.12 are not fact-finding statutes. *State v. Wenmoth*, 8th Dist. Cuyahoga No. 103520, 2016-Ohio-5135, ¶ 16.

{¶ 82} Although the trial court must consider the principles and purposes of sentencing, as well as any mitigating factors, the court is not required to use particular language nor make specific findings on the record regarding its consideration of those factors. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Jones*, 8th Dist. Cuyahoga No. 99759, 2014-Ohio-29, ¶ 13. In fact, unless the defendant affirmatively shows otherwise, it is presumed that the trial court considered the relevant sentencing factors under R.C. 2929.11 and 2929.12. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 11. This court has held that a trial court's statement in its sentencing journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *State v. Paulino*, 8th Dist. Cuyahoga No. 104198, 2017-Ohio-15, ¶ 37.

{¶ 83} On appeal, Wells does not dispute that his sentences were within the permissible statutory ranges for his felony offenses and that the trial court expressly stated that it considered R.C. 2929.11 and 2929.12 in crafting his sentence. (Tr. 662.) In this regard, Wells's individual sentences are not contrary to law. To the extent Wells argues the imposition of consecutive sentences does not comport with the purposes and principles of felony sentencing, we note that the Ohio Supreme Court has held that R.C. 2929.11 and 2929.12 apply only to individual sentences; while R.C. 2953.08(G)(2)(a) and 2929.14(C) set forth the exclusive means of appellate review of consecutive sentences. *State v. Gwynne*, 158 Ohio St. 3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16-17. As stated, the trial court complied with the requirements of R.C. 2929.14(C)(4) and made consecutive sentence findings that are not clearly and convincingly unsupported by the record. Although Wells appears to dispute the discretion exercised by the trial court in this case, we reiterate that "a sentence is not contrary to law merely because [a defendant] disagrees with the way in which the trial court weighed the R.C. 2929.11 and 2929.12 factors and applied these factors in crafting an appropriate sentence." *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 115, citing *State v. Nelson*, 8th Dist. Cuyahoga No. 106858, 2019-Ohio-530, ¶ 25, citing *State v. Mock*, 8th Dist. Cuyahoga No. 105060, 2017-Ohio-8866, ¶ 21.

{¶ 84} Wells's fourth assignment of error is overruled.

{¶ 85} The record reveals, however, that the trial court failed to incorporate the consecutive sentencing findings that it made at the sentencing hearing into the

judgment entry. Thus, in light of *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, this matter is remanded to the trial court for it to issue a new sentencing entry, nunc pro tunc, to incorporate its consecutive sentence findings.

### E. Allied Offenses of Similar Import

{¶ 86} In his fifth assignment of error, Wells argues the trial court erred by failing to merge all allied offenses of similar import, and by imposing separate sentences for allied offenses that violated his state and federal rights to due process and protections against double jeopardy.

{¶ 87} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

{¶ 88} In Ohio, this constitutional protection is codified in R.C. 2941.25. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal philosophy that a major crime often includes as inherent

therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger*, 45 Ohio St.2d 238, 344 N.E.2d 133 (1976).

{¶ 89} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶ 90} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. In *Ruff,* the Supreme Court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true (1) the conduct constitutes offenses of dissimilar import or significance, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B).

{¶ 91} Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving

separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 92} When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 93} On appeal, Wells argues that "the course of events demonstrates that a single act and animus resulted in the offenses charged in Counts 10 and 11 for intimidation and retaliation." Wells contends that the offenses occurred during the same incident and related to Jane Doe's signing of the recantation letter that was sent to the police.

{¶ 94} Wells did not raise the issue of merger at the time of sentencing. Where a defendant fails to raise the issue of allied offenses in the trial court, he forfeits all but plain error review on appeal. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Under the plain error standard, an error is not reversible unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *Id.*; *see also* Crim.R. 52. Applying the plain error standard to an allied offenses argument, the "accused has the burden to demonstrate a reasonable probability that the convictions are allied offenses of similar import committed with the same conduct and without a separate animus" or import. *Id.* The defendant must meet this burden before a reviewing court may reverse for plain error. *Id.*

{¶ 95} Based on the evidence presented at trial, we are unable to conclude that Wells has satisfied his burden under the plain error standard. In this case, the record reflects that in response to Jane Doe's filing of criminal claims against Wells, Wells formulated a calculated plan to arrange a meeting with Jane Doe at her home by communicating with her on a social-media platform and using a fake name. Wells then arrived at her home with a stun gun, where he proceeded to threaten her with the weapon and verbally threaten bodily harm. Undoubtedly, Jane Doe's testimony revealed that Wells's unlawful conduct was done in response to her filing of the criminal charges with the city of Bedford Police Department. Thus, Wells completed the offense of retaliation at the moment he arrived at Jane Doe's home and pointed the stun gun in her direction and threatened unlawful harm with the motivation of retaliation.

{¶ 96} In contrast, the conduct supporting Wells's conviction for intimidation was done with the separate motivation, or animus, to influence or hinder Jane Doe from prosecuting the criminal charges. After Wells completed the retaliation offense, he facilitated the criminal intimidation by knowingly forcing Jane Doe, under the unlawful threat of harm, to sign a typed recantation letter. The conduct relating to the recantation letter was committed separately from acts constituting the retaliation charge, and resulted in a separate, identifiable harm to Jane Doe. The recantation letter was intended to impair Jane Doe's ability to pursue a criminal prosecution against Wells for past conduct, while Wells's calculated use of a social-media platform under false pretenses and his subsequent threats of harm

were retaliatory and were intended to cause Jane Doe emotional distress. Following the mandates of *Ruff*, we find the trial court did not commit plain error by failing to merge Wells's retaliation and intimidation convictions.

{¶ 97} Wells's fifth assignment of error is overruled.

{¶ 98} Judgment affirmed and case remanded for nunc pro tunc correction of the sentencing entry.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded for nunc pro tunc correction of the sentencing entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR